**WESTERN PCS II CORPORATION, a Delaware Corporation, Petitioner,**

v.

**EXTRATERRITORIAL ZONING AUTHORITY OF THE CITY AND COUNTY OF SANTA FE, Richard Anaya, Santa Fe County Commissioner, Herman M. Rodriguez, Santa Fe County Commissioner, Frank Montaño, Santa Fe City Councilor, and Chris Moore, Santa Fe City Councilor, Respondents.**

No. Civil 96–1473 LH/DJS.

United States District Court,
D. New Mexico.

Feb. 27, 1997.

John P. Eastham, James T. Reist, H. Nicole Schamban, Kemp, Smith, Duncan & Hammond, P.C., Albuquerque, NM, for Petitioner.

Steven Koplman, County Attorney, County of Santa Fe, NM, Peter Dwyer, Assistant Santa Fe City Attorney, City of Santa Fe, NM, for Respondents.

## MEMORANDUM OPINION

HANSEN, District Judge.

**THIS MATTER** comes before the Court on the Petitioner's Verified Petition for Review of Zoning Decision, for *Writ of Certiorari*, and for *Writ of Mandamus* (Docket No. 1), Petitioner's Notice of Appeal (Docket No. 2), Petitioner's Statement of Appellate Issues (Docket No. 18), and Respondents' Statement of Appellate Issues and Response to Appellant's Statement of Appellate Issues (Docket No. 20). The Court, having considered the pleadings submitted by the parties, the arguments of counsel, and otherwise being fully advised, finds that the Petitioner's pleadings are well taken, and its request for a *Writ of Mandamus* will be **granted.**

### I. JURISDICTION

Petitioner's claims arise under the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 332, which permits any person adversely affected by a decision by any state or local government in violation of the Telecommunications Act to "commence an action in any court of competent jurisdiction." Therefore, this Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1331, granting this Court original jurisdiction over "all civil actions arising under the ... laws ... of the United States." The Telecommunications Act "vests the court with sufficient authority to grant ... *mandamus* relief if such relief would be warranted under the circumstances." *BellSouth Mobility Inc. v. Gwinnett County, Georgia*, 944 F.Supp. 923, 929 (N.D.Ga.1996).

The procedural posture of this action is, however, unusual. The Petitioner filed a Verified Petition for Review of Zoning Decision, for *Writ of Certiorari*, and for *Writ of Mandamus* (Docket No. 1), seeking relief under the Telecommunications Act for Respondent Extraterritorial Zoning Authority of the City and County of Santa Fe and the Individual Respondents' (collectively the "EZA") failure to grant them a special exception request. The Petitioners sought review of the EZA's decision under the procedures set out in N.M.STAT.ANN. § 3–21–9 and Rule 1–074 NMRA 1997. While this Court is not required to follow state procedures because its jurisdiction is granted by federal law, the Court concluded at the hearing on the Respondent's Motion to Dismiss on December 13, 1996, that these state procedures would expedite these proceedings and would comport with the strictures of the Telecommunications Act and the intent of Congress. *See* H.R. CONF.REP. No. 104–458, at 209 (1996)

(noting the intent of the conferees "that the court to which a party *appeals* a decision under section 332(c)(7)(B)(v) may be the Federal district court in which the facilities are located or a State court of competent jurisdiction, ... and that the courts act expeditiously in deciding such cases") (emphasis added). Pursuant to Rule 1–074 NMRA 1997 and this Court's Order, the Respondents filed a Record on Appeal on January 13, 1997 (Docket No. 17).

## II. THE PROCEEDINGS BELOW

The Petitioner, Western PCS II Corporation ("Western"), filed this action to challenge the decision of the EZA denying its application to mount an antenna array to a water tank and to place equipment cabinets beside that water tank on certain property[1] owned by the County of Santa Fe. The County's deed is subject to a reservation which states:

Reserving to grantors, their successors and assigns, the right to use so much of said Tract A as may be reasonably convenient or necessary for water utility, other utility purposes and fire protection purposes, including the erection of storage tanks, pump stations and related structures in connection with the Hondo Hills subdivision and other subdivisions served by the water utility serving Hondo Hills.

(R.Ex. A at 3.) The grantors, Sunlit Hills of Santa Fe, Inc. and Hondo Hills, Inc., have apparently "entered into an agreement with Western allowing Western to mount equipment cabinets and an antenna array on a water tank already existing on the property and owned by the grantors for the construction of a wireless telecommunications service facility." (Petitioner's Statement of Appellate Issues ¶ 2 at 3–4; *see also* R.Ex. E at 7 (noting that the EZA received a "letter from Ralph Vail, the president of Sunlit Hills Water Association, giving Koll Telecommunications the go ahead to mount these antennas array [sic] on the water tank ...").) Western, through its agent Koll Communications, filed an application on April 22, 1996, for a special exception to place its equipment on

the site pursuant to its agreement with Sunlit Hills, Inc. and Hondo Hills, Inc. (R.Ex. A at 1–2.) Koll Communications explained in its application that the site was chosen because of its proximity to Interstate 25, which it noted required a "multi-site configuration to provide adequate coverage ... because of its length, topography, and traffic patterns...." (R.Ex. B at 5–6.) Koll also explained that "[t]he water tank site, located on a ridge top, will lend critical support to the Western PCS II configuration through this corridor." (*Id.* at 6.) Koll described the proposed facilities and the potential impact of those facilities as follows:

The proposed site will consist of antennas mounted on the sides of the water tank, each antenna painted to match the color of the tank. The radio equipment cabinets will be placed on a concrete slab and contained behind a 6–foot chain link fence next to the water tank. Utilities will be procured from existing power and telco onsite, or in the immediate area. An existing dirt road provides access to the site.

The equipment and facility described here produces no noise, dust, pollution, refuse, or other adverse effect on environmental health. The site is unmanned and requires no sewer, water, policing, or other services other than electrical power. It will be subject to monthly maintenance inspections by Western PCS personnel. In addition, it will not be unsightly or detract from the architectural integrity of the building and surrounding area, and it will not interfere with other licensed and operating broadcasting frequencies.

(*Id.* at 6; *see also* R.Ex. B at 7–8.)

The Petitioner's request was reviewed by the EZA's preliminary review body, the Extraterritorial Zoning Commission ("EZC"), on June 18, 1996, and the EZC, by unanimous voice vote, approved the application, subject to certain conditions. (R.Ex. B at 11.) In accordance with this EZC approval, Roman Abeyta, a Development Review Specialist II working for the EZA, wrote a memorandum to the EZA on August 27, 1996,

---

1. The property in question is described in the Development Review Application as being situated east of the Old Las Vegas Highway, within Section 18, Township 16 North, Range 10 East in the Hondo Hills Subdivision Unit I, Tract A, Block 3. (*See* R.Ex. A at 1.)

noting the EZC's recommendation that the EZA approve the request. (R.Ex. C at 1–2.) In that memorandum, Mr. Abeyta stated that Section 7 of the City and County's Extraterritorial Zoning Ordinance ("EZO") applied to Western's proposed utility infrastructure and that requested exceptions such as Western's "can be granted based on an evaluation that the request will not be adverse or detrimental to the public health, safety, and welfare." (*Id.* at 2.) The recommendation also included the following conditions for approval:

1. The applicant must provide development submittal for the access road subject to approval by the County Staff.

2. Compliance with applicable franchise agreements.

3. This proposal is subject to a permit from the State of New Mexico Construction Industries Division.

4. Antenna height cannot exceed twenty-four feet (24').

5. A retention pond must be constructed [to] mitigate increased run-off created by the concrete pad for cabinets.

6. Graffiti on existing water tank must be removed.

7. A master plat must be prepared with signature lines for the Land Use Administrator, EZC and EZA Chairpersons, and recorded in the office of the County Clerk.

8. Any change of use or expansion of approved utility use is subject to review and approval by the EZC–EZA.

(R.Ex. C at 2–3.) These conditions were not contested by Western, and it agreed to comply with them at hearings before the EZC and the EZA. (R.Ex. B at 10, Ex. E at 45.)

The EZA had three meetings at which it considered Western's application and the EZC's recommendation that the request be approved. The first meeting was held on July 30, 1996. However, the matter was tabled because of a concern raised by City Councilor Chris Moore about whether the easement reserved in the deed was sufficient to permit Western's use of the property. (R.Ex. E at 9.) Prior to the tabling, County Commissioner Anaya instructed the EZA staff to determine if the County could override the agreement between Western and the holder of the easement. (*Id.* at 10.)

The EZA reconvened to consider the request on August 27, 1996. (R.Ex. E at 13.) The EZA again focused on the language in the deed and whether the reserved easement was a sufficient property interest for the use proposed by Western. (*Id.* at 15–37.) Even the statements by members of the community neighboring the site focused primarily on the extent of Western's property interest. (*See id.* at 31–35.) During this second meeting Chairman Montaño and the other members of the EZA discussed the Telecommunications Act and ultimately decided to table the request for another 30 days to permit the County and City attorneys to review the requirements of that Act. (*Id.* at 19, 35–37.)

The final meeting of the EZA to consider Western's request occurred on September 24, 1996, over five months after Western made its application for a special exemption request. (R.Ex. E at 39–40.) At this meeting Western, through its Agent Veronica Jones, the Zoning Manager for Koll Communications, gave a statement concerning the appropriateness of the site to Western's needs and Western's efforts to design the facility to minimize the impact of the facilities on the surrounding communities. (*Id.* at 43–46.) In particular, Ms. Jones noted that Western has "scouted [the Hondo Hills area] very thoroughly [and that t]here is very little in the way of alternatives to this site that will provide coverage through those nooks and crannies and that portion of [I–25] and hookup with other sites. It is a very difficult area, very difficult." (*Id.* at 48.) However, the meeting quickly returned to a discussion of the sufficiency of Western's property interest. (*Id.* at 46–69.) Ultimately, the EZA concluded the meeting by denying Western's request, based apparently on its conclusion that Western had an insufficient property interest to support its proposed activities and because the EZA did not hear "from a single resident of this subdivision who wants the service . . . ." (*Id.* at 69.)

### III. THE TELECOMMUNICATIONS ACT

While generally preserving the authority of local zoning boards, the TCA explicitly

limits their ability to regulate the provision of personal wireless services by prohibiting any "unreasonable discrimina[tion] among providers of functionally equivalent service," and by requiring that regulations "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(I–II). The statute requires State and local governments to act "within a reasonable period of time" on requests to construct wireless facilities. 47 U.S.C. § 332(c)(7)(B)(ii). Moreover, the statute specifically requires that any denial of such a request be "in writing and supported by *substantial evidence* in a written record." 47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added). It also prohibits state and local governments from making the denial "on the basis of the environmental effects of radio frequency." 47 U.S.C. § 332(c)(7)(B)(iv).

## A. TCA Requirement of Written Denial Supported by Substantial Evidence

 The Court finds that the EZA failed to comply with even the most basic of the Telecommunications Act's requirements—that it produce a *written* denial, supported by *substantial evidence* in a written record—when it denied the Petitioner's request. 47 U.S.C. § 332(c)(7)(B)(iii). The EZA made no written findings denying Western's request, and despite Respondents' contention that the transcript of the proceedings before the EZA is a sufficient written decision, this Court finds that a post-appeal transcription of the proceedings before the EZA is not sufficient to satisfy the requirements of Section 332(c)(7)(B)(iii). The requirement for a written denial was obviously included to permit a reviewing court to ascertain the rationale behind a denial so that it can determine if that denial comports with the requirements of the statute. *See* H.R.CONF.REP. No. 104–458, at 208. The transcript of the proceedings below clearly indicates only the rationale of one member of the EZA. (R.Ex. E at 68.) Therefore, the purpose of this provision has been frustrated by the EZA's failure to comply with the law.

 Moreover, the record does not provide any indicia of "substantial evidence" which would support a denial of the special exemption request on any legitimate ground. (R.Ex. E at 68.) As the *BellSouth* court noted, "[a]lthough the court is not free to substitute its judgment for that of the [local zoning board,] it must overturn the ... decision under the substantial evidence test if it 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the [zoning board's] view.'" 944 F.Supp. at 928 (quoting *Bickerstaff Clay Products Co. v. N.L.R.B.*, 871 F.2d 980, 984 (11th Cir.), *cert. denied*, 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989)). As discussed further below, the EZA spent the vast majority of its time discussing irrelevant issues of property law. The only other basis given by Councilor Moore was that he did not hear "from a single resident of this subdivision who wants the service," and he therefore concluded that the residents of the neighboring subdivision were of the opinion that the facility would "not serve them." (R.Ex. E at 69.) Even if this astounding conclusion—based on the absence of public comment—were correct, it would not provide "substantial evidence" to support the denial and to override the federal interests in this matter. *See BellSouth*, 944 F.Supp. at 928.

 Substantial evidence must be "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1952). The question is not whether the neighboring residents would be served by Western's facility, but rather whether a denial would violate federal law and would be permitted under the EZO. This Court concludes that the "generalized concerns" expressed by the five neighbors who testified and the couple of others who wrote letters to the EZA, do not constitute "substantial evidence" to support the denial. I also note that the majority of these concerns, as expressed by the neighbors themselves, focussed on questions of property law. (*See e.g.* R.Ex. E at 32–35.) As I discuss below, the EZA is not the proper forum in which to address these concerns. The concerns prop-

erly before the EZA, that the facilities might be a visual blight in the neighborhood, while legitimate concerns, are not supported by the record.

The antennas, as described in the application, will not be noticeable as they will be the same color as the water tank and will not exceed the height of the water tank. (*See* R.Ex. B at 6–8.) The facilities also include two equipment cabinets which will be set beside the water tank. (*Id.*) The Court does not believe that there is "substantial evidence" in the record that these cabinets will significantly decrease the visual appeal of the water tank or the surrounding area. However, the EZA may, under Section 7 of the EZO and the Court's *Writ of Mandamus,* require Western to grow a screen of vegetation to eliminate any unsightliness the facility may cause. The Court also notes that Western has agreed to remove the graffiti currently causing a visual blight on the water tank. (R.Ex. B.) Finally, there is no evidence in the record that the proposed facilities will be "adverse or detrimental to the public health, safety, [or] welfare." (R.Ex. C at 2.) Thus, the Court must conclude that there is no "substantial evidence" which could form a legitimate basis for the EZA's denial of Western's request.

This Court would be inclined to remand this matter to the EZA for written findings if the record reflected any legitimate basis for a denial. However, the record indicates instead that the EZA is willing to ignore the requirements of federal law and reach far beyond its authority to create a reason to deny the Petitioner's request.[2] Moreover, the record clearly indicates not only that there is no evidence supporting the EZA's decision, but that there is substantial evidence supporting the Petitioner's application. Therefore, for the reasons set forth below, the Court will not remand this matter for further proceedings but will grant Petitioner's requested *mandamus* relief.

## B. The TCA's Requirement that Competition Be Preserved

In addition to the EZA's failure to issue a written denial of Western's request, the EZA's decision violated the two substantive provisions of the TCA. Congress enacted the TCA with the intent to "increase competition in the telecommunications industry." *BellSouth,* 944 F.Supp. at 927. To that end, the Act provides that local zoning regulators "(I) shall not unreasonably discriminate among providers of functionally equivalent services; and (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i). The record clearly indicates that Western's two competitors in the Santa Fe area, U.S. West and Sprint, are currently providing analog cellular service in the Hondo Hills area, and most significantly, they provide uninterrupted service along the I–25 corridor. (R.Ex. E at 29.) The record also indicates that the proposed site was a unique site, or at least one of a very few possibilities in the area. (R.Ex. B at 5–6, Ex. E at 28, 48.)

It does not take a telecommunications engineer or a marketing expert to recognize that an inability to provide uninterrupted service along the I–25 corridor would seriously impede Western's ability to compete with its competitors in the Santa Fe area. While Western provides a digital technology, rather than the analog service its competitors provide, (R.Ex. E. 43–44), they are "functionally equivalent service[s]." 47 U.S.C. § 332(c)(7)(B)(i)(I). The EZA's denial of Western's exemption either denies Western the opportunity to compete with its competitors along the I–25 corridor (and arguably throughout Santa Fe as a result), or it significantly increases Western's costs, and

---

**2.** Councilor Moore indicated at the end of the last hearing before the EZA that he believed that the Telecommunications Act "was written mainly by the telecommunications industry in order to try to weaken the power of local governments" and that he was "especially annoyed that the act takes away from local governments the ability to regulate on the basis of environmental concerns." (R.Ex. E at 69.) The Councilor then argued, in the only statement that indicates the rationale for the denial, that the request could be denied on the grounds that the easement reserved in the deed is insufficient to support Western's proposal and on the basis of the statements of a few local residents. (*Id.*)

thereby reduces its ability to compete, by requiring it to find an alternative site. As the record does not support a legitimate basis for the EZA's denial, the Court must conclude that the denial amounts to the "unreasonable discrimination" prohibited by the Telecommunications Act of 1996. *Id.*

■■■ Finally, the Court concludes that the denial also violated the Act's requirement that local regulation "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § (c)(7)(B)(i)(II). While Western provides "functionally equivalent services," the record indicates that Western's digital technology is an advance in cellular communications technology. (R.Ex. E at 43–44.) Denial of Western's request has the effect of denying the provision of this new technology and its advantages to the Hondo Hills area. Most significantly, it denies this new technology to the I–25 corridor, as Western is the only provider of digital technology in the Santa Fe area. *Id.*

For the reasons outlined above, the Court concludes that the EZA violated the TCA by failing to issue a written denial, 47 U.S.C. § 332(c)(7)(B)(iii), by "unreasonably discriminating among providers of functionally equivalent services," 47 U.S.C. § 332(c)(7)(B)(i)(I), and by "having the effect of prohibiting the provision of ..." the new digital technology Western is advancing, 47 U.S.C. § 332(c)(7)(B)(i)(II). These violations, by themselves, require that the EZA's decision be revisited. The Court's initial inclination was to remand this matter to the EZA, for reconsideration in light of the TCA. However, as noted above, given the EZA's indications that it is willing to reach beyond its authority to avoid granting Western's request and to avoid the requirements of the TCA, this Court finds the Petitioner's requested *mandamus* relief to be the appropriate means to resolve this matter.

## IV. AUTHORITY OF THE EZA

■■■ The EZA's authority is granted by state statute which gives the EZA the power to regulate and restrict the "(1) height, number of stories and size of buildings and other structures; (2) percentage of a lot that may be occupied; (3) size of yards, courts and other open space; (4) density of population; and (5) location and use of buildings, structures and land for trade, industry, residence or other purposes." N.M.STAT.ANN. § 3–21–1(A) (Repl.Pamp.1995). As the majority of the Record on Appeal is dedicated to a discussion of whether Western's property interest is sufficient to support its proposed activities, and given Councilor Moore's concluding comment that the deed reservation is sufficient to deny the special exemption request (R.Ex. E at 69), it is clear to this Court that the basis for the denial was, in large part, a result of the EZA's interpretation of property law. Respondents have given the Court no authority to indicate that the EZA has the power or the expertise to adjudicate questions of property law. The New Mexico Supreme Court has held that "it is not within the proper function of the zoning authority to condition an exception to the use of real property upon personal rights of ownership, rather than use." *Mechem v. City of Santa Fe,* 96 N.M. 668, 672, 634 P.2d 690, 694 (1981).

Moreover, to permit the EZA to adjudicate the question of the extent of Western's property interest would violate the most basic of due process requirements. The EZA's concern appears to have grown out of its recognition that Santa Fe County owns the property upon which Western's easement rests. What concerns the Court is that the majority of the EZA's voting members are representatives from the County of Santa Fe. To permit the EZA to act as a tribunal to adjudicate Western's interest in the property would allow the owner, whose interest is adverse to the interests of Western, to determine the scope of Western's easement. Under these circumstances, even if the EZA were qualified and/or empowered to make such a determination, it could hardly be considered an "impartial tribunal," as required by due process. Therefore, it is clear that the EZA improperly considered Western's property interest and this rationale must be excluded from any consideration of Western's request.[3] Moreover, the members of the

---

**3.** The Court recognized this incongruity at the

first hearing on this matter and recommended

EZA made it clear during the final hearing on Western's request that they were basing their denial on the sufficiency of Western's property interest because the TCA and the EZO restricted the EZA's ability to deny the request on other grounds. The Court is concerned that should it simply remand this matter to the EZA it will simply find alternative "reasons" for a denial, rather than basing its decision on the record before it. Therefore, *mandamus* relief will issue.

## V. THE DETERMINATION OF THE EZC WAS BASED ON "SUBSTANTIAL EVIDENCE"

■ After a single meeting, the EZC, the preliminary hurdle for any application for a special exemption request under the EZO of the City and County of Santa Fe, promptly granted its approval of Western's special exemption request and, within three months of Western's application, formally recommended approval to the EZA. This approval was not a rubber stamping of Western's request, but a careful consideration of Western's application, the requirements of the EZO, and the interests of the community surrounding the proposed site. Moreover, the EZC recognized the limits on its and the EZA's authority and based its decision, appropriately, on the EZO rather than on allegations that Western's property interest was insufficient. (*See generally* R.Ex. B.) The EZC also recognized that it could improve the visual appeal of the water tank by requiring that Western remove graffiti which is currently on the water tank as a condition of its approval. (*Id.*) This was clearly within the authority the EZO grants the EZC to "impose appropriate conditions to promote compatibility and mitigate impacts." (R.Ex. B at 9.) The EZC or EZA also clearly could require Western to grow screening vegetation to block the view of the equipment on the hill as provided for in Section 7 of the EZO.

The conclusions of the EZC and its decision to recommend approval of Western's application are supported by "substantial evidence" in the record and should have been the basis for an EZA approval of Western's request. Instead, the EZA got distracted by concerns that Western's property interest was insufficient to support its proposed activities. While these are legitimate and serious concerns, the EZA is not the proper forum to adjudicate Western's property interest and the EZA should not have considered that issue. There is nothing in the record to indicate that Western's proposed antenna array would be "detrimental to the public health, safety, [or] welfare" as required by the EZO, nor is there anything to indicate that Western's proposal would detract visually from the current appearance of the site. (*See generally* R.Ex. B.) In other words, there is nothing in the record to support the denial of Western's request under the EZO or the authority of the EZA. However, the EZA did, and continues to have, the authority under Section 7 of the EZO to require Western to establish a visual screen to block the neighbor's view of the proposed facility.

## VI. CONCLUSION

■ The Court concludes that a *writ of mandamus*, as requested by Western, is the appropriate remedy in this case. This matter needs to be resolved expeditiously as required by the Telecommunications Act, and Western has already suffered numerous unnecessary delays. 47 U.S.C. § 332(c)(7)(B)(v). The EZA gave no indication in the proceedings below that it would take seriously the Act's mandate that local governments act on requests such as Western's in a "reasonable period of time." 47 U.S.C. § 332(c)(7)(B)(ii). In fact, the EZA's willingness to repeatedly table the application to investigate irrelevant issues indicates just the opposite.

that if the County was concerned about Western's use of the easement on its property, it should file an action to quiet title in state court, the appropriate tribunal before which to challenge the scope of an easement. At the hearing on Petitioner's appeal on February 14, 1997, the County's Attorney indicated that it would likely challenge Western's property interest in a state

action to quiet title. Had the County acted on this concern *in the appropriate forum* when it first learned of Western's claimed interest, Western's property interest could have been appropriately adjudicated in state court, the EZA could have acted promptly on Western's request, and this entire appeal could have been avoided.

This Court has concluded that the TCA was violated by the EZA's failure to issue a written denial of Western's application, 47 U.S.C. § 332(c)(7)(B)(iii), by "unreasonably discriminating among providers of functionally equivalent services," 47 U.S.C. § 332(c)(7)(B)(i)(I), and by "having the effect of prohibiting the provision of . . ." the new digital technology Western is advancing, 47 U.S.C. § 332(c)(7)(B)(i)(II). Moreover, I have concluded that the EZA's decision was based on determinations it made which went far beyond its authority. I have also concluded that the EZA's decision cannot be "supported by substantial evidence" contained in the record. In fact, I have concluded that the record supports the EZC's approval of Western's application. Therefore, I conclude, just as the *BellSouth* court concluded, that "simply remanding the matter to the [EZA] for their determination would frustrate the TCA's intent to provide aggrieved parties full relief on an expedited basis," and that *mandamus* relief is warranted under the circumstances. 944 F.Supp. at 929.

A *Writ of Mandamus* is entered contemporaneously with this Memorandum Opinion ordering the Extraterritorial Zoning Authority to grant Western's Special Exemption Request and to adopt the recommendation of the Extraterritorial Zoning Commission. The Extraterritorial Zoning Authority will comply with the *Writ,* forthwith.

### WRIT OF MANDAMUS

**THIS MATTER** comes before the Court on the Petitioner's Verified Petition for Review of Zoning Decision, for *Writ of Certiorari,* and for *Writ of Mandamus* (Docket No. 1), Petitioner's Notice of Appeal (Docket No. 2), Petitioner's Statement of Appellate Issues (Docket No. 18), and Respondent's Statement of Appellate Issues and Response to Appellant's Statement of Appellate Issues (Docket No. 20). The Court entered a Memorandum Opinion contemporaneously with this *Writ,* finding that the Petitioner's pleadings are well taken, and granting its request for *mandamus* relief.

**IT IS, THEREFORE, ORDERED** that Respondent EXTRATERRITORIAL ZONING AUTHORITY of the City and County of Santa Fe ("EZA") and the individual respondents in their official capacities as members of the EZA, RICHARD ANAYA, Santa Fe County Commissioner, HERMAN M. RODRIGUEZ, Santa Fe County Commissioner, JAVIER M. GONZALES, Santa Fe County Commissioner, FRANK MONTAÑO, Santa Fe City Councilor, and CHRIS MOORE, Santa Fe City Councilor, ("Individual Respondents") will:

1. Approve the Petitioner Western PCS II Corporation's ("Western") Application for a Special Exemption Request, filed on April 22, 1996, with the EZA and referred to as EZ Case Z 96–4680, Koll Telecommunications Services, Inc., under the terms recommended by the Extraterritorial Zoning Commission in its July 30, 1996, Memorandum to the EZA, referred to in the Record on Appeal before this Court as Exhibit B. This approval is to be made pursuant to Section 7.D.4 of the Extraterritorial Zoning Ordinance of the City and County of Santa Fe (EZO).

2. Respondents will approve Petitioner's Application for a Special Exemption Request at the next regularly scheduled EZA meeting. However, in no event is this approval to be granted later than 30 days after this *Writ* is entered.

3. Respondents may require Western to make reasonable efforts to establish a visual screen of its facilities through the growth of vegetation, as provided for in Section 7.D.4 of the EZO. However, in no event is the approval to be contingent on Western's prior compliance with such a condition.

**Respondents will comply with this *Writ* of Mandamus, forthwith.**