**APT MINNEAPOLIS, INC., Plaintiff,**

v.

**EAU CLAIRE COUNTY, Defendant.**

**No. 99–C–609–C.**

United States District Court,
W.D. Wisconsin.

Dec. 30, 1999.

Gary A. Van Cleve, Larkin, Hoffman, Daly & Lindgren, Ltd, Bloomington, MN, for Plaintiff.

Andrew A. Jones, Whyte Hirschboeck Dudek S.C., Milwaukee, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

Plaintiff APT Minneapolis, Inc. is a provider of wireless telecommunications services that wants to build a 165–foot communications tower on one of the highest points in the city of Eau Claire, a hill known as Mt. Tom. The city of Eau Claire agreed with plaintiff's plan, and even leased the company the land on which to build the tower, but the Eau Claire County Board of Land Use Appeals threw a wrench in the works when it denied plaintiff's application for a variance from a law that restricts the height of structures in areas near the airport. (Plaintiff's proposed tower on Mt. Tom exceeds by 70 feet the maximum elevation prescribed by the zoning code for structures in that area.)

Following the board's denial of the variance application, plaintiff brought this action seeking injunctive relief under the Telecommunications Act of 1996, Pub.L. 104–104, 110 Stat. 56 (codified in scattered sections of Title 47 of the United States Code) and monetary relief under 42 U.S.C. § 1983. The Telecommunications Act deregulated communications companies in the interests of increasing competition and accelerating private sector deployment of advanced telecommunications and information technologies and services. It provides for federal judicial review of local zoning decisions relating to telecommunications facilities. *See* H.R. Conf. Rep. No. 104–458, at 113 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124.

Before the court are the parties' cross motions for summary judgment. Plaintiff contends that the board's decision to deny the variance was not supported by substantial evidence in the record as required by § 332(c)(7)(B)(iii) of the Telecommunications Act and that the board discriminated unreasonably against wireless communications providers and effectively prohibited the provision of personal wireless services, thereby exceeding the limitations on local zoning authority set forth in the act. *See* 47 U.S.C. § 332(c)(7)(B)(i).

Having reviewed the written record of the proceedings before the board, I con-

clude that summary judgment must be granted in favor of defendant. Substantial evidence in the record supports the board's determination that plaintiff failed to demonstrate that unnecessary hardship would result if the variance was not granted; plaintiff did not show that one tower on Mt. Tom could not accommodate both its equipment and the city of Eau Claire's communications equipment. Further, the record does not support plaintiff's claims that the board discriminated against it or effectively banned personal wireless services when it denied its variance application.

From the parties' proposed findings of fact, I find that the following material facts are not disputed for the purpose of deciding the motions for summary judgment.

## UNDISPUTED FACTS

Plaintiff APT is a Delaware corporation engaged in the business of providing personal communication services in the Minneapolis Major Trading Area, which consists of Minnesota, northwestern Wisconsin, North Dakota and eastern South Dakota. The County of Eau Claire, Wisconsin, is in this Major Trading Area. Plaintiff is licensed by the Federal Communications Commission to provide its customers personal communications service, a new wireless, high-frequency telecommunications service that employs digital technology and offers a wide variety of services for individual users.

In order to provide personal communications service, a provider like plaintiff relies on a network of antennas capable of receiving and transmitting wireless communication signals in accordance with radio frequency standards. The location of these antennas is determined by radio frequency engineering that takes into account several factors, such as population demands, topographical constraints of the land, the height of the proposed antenna, proximity to other antennas and the height of other antennas. To operate properly in the personal communications services system, antennas must be elevated sufficiently to allow an unimpeded line of sight to end users' telecommunications equipment. This is often done by locating the antenna on an existing host structure in the proposed service area, such as an existing water or fire tower. If a suitable host structure is not available, a communications tower must be constructed to elevate the antenna.

Plaintiff's radio frequency engineering staff concluded that the optimal location in the area on which to place a communications tower was the summit of Mt. Tom, a 22.8 acre parcel of land owned by the city of Eau Claire. This tower would complete plaintiff's network of antennas in the area and allow it to provide uninterrupted residential and commercial personal communications service for the city and along Interstate 94 and State Highway 53.

In July 1998, the Eau Claire City Council adopted a resolution approving a general site development plan submitted by plaintiff for the construction of a 165–foot monopole structure on the summit of Mt. Tom, in close proximity to an existing 180–foot tower used by the City of Eau Claire for its communications system. In September 1998, the council approved a site agreement with plaintiff that allowed the company to lease a 60 by 60 square foot area on Mt. Tom for the purpose of erecting and maintaining the monopole tower, which would have a total elevation of 1,180 feet above mean sea level and 20 feet below the city's tower when erected on Mt. Tom.

The area in which Mt. Tom is located is subject to the requirements of Eau Claire County's Airport Zoning Ordinance, which restricts the elevation of structures in the relevant area to 1,110 feet above mean sea level. A person seeking to erect a structure exceeding the height limitation must obtain a variance from the Eau Claire County Board of Land Use Appeals in accordance with the following provision:

> *18.50.090   Board of land use appeals.*
> A. Appeals from decisions made under this chapter and requests for variance from specific provisions of this chapter

shall be heard by the Board of Land Use Appeals subject to the provisions of Section 18.31.020.

B. The board shall only grant variances in cases where strict application of the regulations of this chapter would eliminate all reasonable use of property.

Section 18.31.020(C)(3) of the zoning code provides that the Board of Land Use Appeals shall:

Grant variances from the terms of this subtitle where, owing to special conditions, the literal enforcement of this subtitle would result in unnecessary hardship. For the purposes of this section, "unnecessary hardship" is defined as an unusual or extreme decrease in the adaptability of the property to the uses permitted by the zoning district, caused by facts such as rough terrain or soil conditions uniquely applicable to that particular piece of property, as distinguished from those conditions applicable to most or all other property in the same zoning district. Variances shall be granted only so that the spirit of this subtitle is observed and substantial justice done. Variances may be granted: ... [t]o permit construction of a building or structure which will exceed the height limit for the district in which it is located.

Section 18.31.020(C)(6) of the zoning code directs that the board's decisions with respect to variance applications are to be guided by the following "standards and principles":

a. The burden is on the applicant to prove the need for a variance.

b. Pecuniary hardship, loss of profit, self-imposed hardships, such as that caused by ignorance, deed restrictions, proceeding without a permit, or illegal sales are not sufficient reasons for getting a variance.

c. The plight of the applicant must be unique, such as a shallow or steep parcel of land or situation caused by other than his own action.

d. The hardship justifying a variance must apply to the appellant's parcel or structure and not generally to other properties in the same district.

. . . . .

g. The variance must by standard be the minimum necessary to grant relief.

h. The variance will not be in conflict with the spirit of this subtitle or other applicable ordinances, nor contrary to state law or administrative order.

. . . . .

In 1988, the board approved a variance from the Airport Height Restriction Ordinance to allow the city to construct its communications tower on Mt. Tom. In 1998, plaintiff applied for a variance so that it could build its tower at an elevation of 1,180 feet. The FAA had previously determined that plaintiff's proposed tower on Mt. Tom would not pose a hazard to air navigation.

The board held a public hearing on plaintiff's application on November 18, 1998. Three members of the board, Randall Stutzman, Robert Hevey and Frank Neibauer, were present; two members were absent. At the hearing, a representative from plaintiff informed the board that, after agreeing initially that the company could build its own tower on Mt. Tom at "site two," the city had "unilaterally" amended the lease agreement and directed plaintiff to replace the existing tower (on which the city's equipment was located) with a new tower on which the city and plaintiff would co-locate. This site was called "site four." Plaintiff's representative stated that, although discussions with the city were continuing, a variance was needed no matter which site was eventually agreed upon by the city because "at worst from our vantage point, we would need to reconstruct the city's tower in order to relocate all of their equipment onto our tower ...." Transcript of Nov. 18, 1998, Public Hearing, dkt. # 12, Ex. E–5. The board voted 3–0 to deny the request for a second tower on

Mt. Tom but granted a variance "to allow a single tower not to exceed 1,200 feet mean sea level. This tower can be the existing city tower or a replacement tower and it shall allow co-mingling for both the City of Eau Claire and APT, Minneapolis, Inc." *Id.* at E–10. (These facts are provided as background only; I will not consider the record before the board in 1998 when deciding whether the 1999 decision was supported by substantial evidence.)

On July 13, 1999, plaintiff applied again to the board for a variance from the height restriction. On July 21, 1999, the Eau Claire County Department of Planning and Development recommended that the board deny the variance application. In its report, the department noted that, although plaintiff stated in its application that the city's tower was not capable of handling plaintiff's equipment, it did not explain why it was not possible to construct a new tower that was capable of handling both uses. The report also noted that the parcel in question was not unique "because it is the elevation that is unique not the property," and that if the variance was granted "it may apply to other towers that would service the city by meeting the same height standards for complete coverage." Dkt. # 12, Ex. C–52.

The board considered plaintiff's height variance application at a public meeting on July 26, 1999. Richard DeVriend, supervisor of the county's Land Use Controls Division, informed the board that a different composition of its members had rejected plaintiff's application for a variance to build a second tower on Mt. Tom in 1998 but approved a variance allowing plaintiff and the city to co-locate on a single tower on the site so long as the tower did not exceed the height of the existing city tower. DeVriend stated that in his view, the board had to consider again whether there was potential for APT and the city of Eau Claire to share one tower or whether there were other alternatives such as multiple towers in different locations throughout the city or a taller tower in a different location. DeVriend indicated that both the FAA and the Wisconsin Department of Transportation Bureau of Aeronautics were in agreement that plaintiff's proposed communications tower would not pose a threat to air navigation traffic.

Plaintiff's representative addressed the board and explained that, after plaintiff had appeared before the board on its previous application for a variance, the city of Eau Claire had changed its position and had agreed that plaintiff could build its own separate tower on site two. As to the possibility of co-locating on a tower with the city, plaintiff's representative stated:

> There is simply not on the table now any possibility of a co-location between the City and APT. That doesn't mean that this tower that APT is building isn't going to be capable of holding other users. It will be capable of holding three other users besides APT. There is a very different requirement though for the City to use a tower and for another personal communication system provider to use a tower. The weight of the equipment, the nature of the equipment is far different and that's why the City and APT could not work out a co-location before. Because the City's capacity and needs would essentially usurp all co-location capacity on any tower.

Transcript of July 26, 1999, Public Hearing, dkt. # 12, Ex. C–57.

Plaintiff's representative told the board that the company needed the tower on Mt. Tom to complete its system of antennas that were already installed in the city and to provide complete coverage for the Eau Claire area. Its representative also stated that other alternatives to constructing a tower on Mt. Tom were considered but were not feasible.

The board voted to table the variance application "until APT can come up with some documentation, engineering documentation, why co-location or co-mingling . . . is not feasible with the City of Eau Claire and also some further documentation why alternate sites would not be feasible." *Id.* at Ex. C–63.

Plaintiff submitted additional documentation to the board, as requested. The documentation included an engineering report that indicated that the city's tower was not capable of supporting the addition of plaintiff's telecommunications equipment. Another report showed that plaintiff's proposed tower could accommodate both the city's equipment and plaintiff's equipment but the result would be the loss of any co-location opportunity. Plaintiff also submitted a letter to the city planner and city attorney from Jim Fering, the city's purchasing manager, in which he analyzed APT's proposal regarding a tower on Mt. Tom. In the letter, Fering recommended allowing plaintiff to build its own tower capable of supporting other personal communications services companies. He noted that co-location on the city's tower was not feasible and that building a single tower to accommodate all antennas (the city's, plaintiff's and two other personal communications services companies) would be costly and could potentially create interference among the transmitters. Plaintiff also submitted documentation showing that it had considered two alternative sites at Galloway Street and Hogarth Street that together could provide the same coverage as the single site on Mt. Tom.

On August 23, 1999, the board considered plaintiff's height variance application again. Plaintiff's representative addressed the board and explained the additional documentation that had been submitted. He advised the board that the company had approached the city about obtaining conditional use permits for the Galloway and Hogarth Street sites but had abandoned that option after the city told the company that it preferred the construction of one tower on Mt. Tom instead of the construction of multiple towers elsewhere in the city.

Jerome Thiele, the Airport Manager for the Chippewa Valley Regional Airport, addressed the board. Relying on a series of panoramic photographs of downtown Eau Claire, Thiele argued that there were various other sites besides Mt. Tom upon which the company could erect a communications antenna.

During the board's deliberations, two board members, Thomas Hanson and Frank Neibauer, spoke in favor of granting the height variance. Two others, Robin Walsh and Robert Hevey, were opposed. Both expressed a concern that if they granted plaintiff's request, they would also have to grant variances in the future for other personal communications services companies. Walsh also stated his belief that "[the requested variance] is not unique to the elevation and that would apply to other towers and I don't think it meets the self-imposed hardship standards that we've used before on simple issues ...." *Id.* at Ex. 3–104. At the conclusion of its deliberations, the board voted 3–2 to reject plaintiff's variance application.

In a written notice dated August 23, 1999, the board made the following findings of fact:

1.  Section 18.50.090 of the Eau Claire County Code grants the Board of Land Use Appeals the power to grant variances to the provisions of Chapter 18.50 of the code where strict application of the regulations of Chapter 50 would eliminate all reasonable use of the property.

2.  Section 18.50.030 of the Airport Height Zoning Code, allows structures to be built which do not exceed the height limits as illustrated on the Eau Claire County Height Limitation Zone Map dated June 4, 1980.

3.  The Petitioner, Gary Van Cleve representing Apt Minneapolis, Inc., is seeking a variance to Section 18.50.030 to allow a telecommunications tower to exceed said height limitation by 70 feet on property owned by the City of Eau Claire called "Mt. Tom".

4.  On July 26 and August 23, 1999, public hearings were held on the variance request.

5.  The Petitioner on July 26 and August 23, 1999 submitted testimony and evi-

dence that indicated that the existing city tower on Mt Tom was not capable of handling additional load, that a combination of two sites were not as effective as the Mt Tom location, and that six licenses for the Eau Claire area have been granted which will require additional towers.

6. Additional testimony was received that stated that the Board must find that there would be no reasonable use of the property to grant a variance, economic gain can not be considered, and that there are alternative locations and methods for meeting the demand of the APT·service.

7. The Federal Aeronautics Administration (FAA) has found that the tower would not be an obstruction to the airport and the WI Department of Transportation has found that the granting of the variance is a local decision to be made in context with the safety of the air traffic to and around the airport.

The Board finds the parcel is not unique, it would apply to other towers, and the application has not met the self imposed hardship standard.

## OPINION

### A. *Introduction*

Congress enacted the Telecommunications Act "to provide for a pro competitive, de-regulatory national policy framework designed to accelerate rapidly private-sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition . . . ." H.R. Conf. Rep. No. 104–458, at 113 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124. The act represents a balance between this need for a uniform federal policy and the interests of state and local governments in continuing to regulate certain aspects of the wireless communication industry, the siting of facilities, in particular. *Aegerter v. City of Delafield,* 174 F.3d 886, 887 (7th Cir.1999); *Town of Amherst, N.H. v. Omnipoint Communications En-*

*terprises, Inc.,* 173 F.3d 9, 13 (1st Cir. 1999).

Subsection 332(c)(7) reflects this compromise. It authorizes state and local governments to regulate the placement of facilities for personal wireless services, with certain statutory limitations: they may not "unreasonably discriminate among providers of functionally equivalent services" or act in a manner that effectively prohibits the provision of wireless telephone services, § 332(c)(7)(B)(i)(I) and (II), and they must support any decision to deny certain requests for those facilities with a written opinion that is based on substantial evidence in a written record. § 332(c)(7)(B)(iii).

### B. *Written Decision and Substantial Evidence*

■ The Telecommunications Act requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). In its written decision, as quoted above, the board referred to the criteria for granting a variance and denied plaintiff's application because 1) the parcel is not unique; 2) if the variance were granted, it would apply to other towers; and 3) the application did not meet the self-imposed hardship standard. The board also made seven "findings of fact" relating to the variance application.

Plaintiff suggests that the board's decision does not satisfy the writing requirement because the board did not cite to any evidence in support of its reasons for the denial but simply listed the reasons without comment. Although the parameters of the Telecommunication Act's writing requirement are still being fleshed out in the courts, most courts agree that the act requires state or local governments to provide a written statement of reasons why the application was denied so that a reviewing court may determine the rationale

behind the denial. *See, e.g., Western PCS II Corp. v. Extraterritorial Zoning Authority,* 957 F.Supp. 1230, 1237 (D.N.M. 1997); *AT & T Wireless Services of Florida, Inc. v. Orange County,* 982 F.Supp. 856, 859 (M.D.Fla.1997); *Illinois RSA No. 3, Inc. v. County of Peoria,* 963 F.Supp. 732 (C.D.Ill.1997); *see also Aegerter,* 174 F.3d at 891 (referring in dicta to writing requirement as "the requirement for written findings, supported by substantial evidence in the written record"). *But see AT & T Wireless PCS, Inc. v. Winston–Salem Zoning Board of Adjustment,* 172 F.3d 307, 312 (4th Cir.1999) (writing requirement requires no more than written statement informing applicant that application has been denied); *PrimeCo Personal Communications, L.P. v. Village of Fox Lake,* 26 F.Supp.2d 1052, 1061–62 (N.D.Ill. 1998) (same). The board's decision satisfies this requirement. The board stated in writing the three reasons for denying the application and made findings of fact. Although it would have been helpful if the board would have described its rationale in more detail or cited to specific evidence, the board's written decision along with the written record is sufficient to allow for the review contemplated by the act.

Plaintiff contends that the three ordinance-based reasons cited by the board were not the actual reasons for the denial of the variance application. Plaintiff argues that the requirements of the ordinance were not the focus of the board meetings; rather, the board's concerns were whether plaintiff could co-locate on a tower with the city and whether any alternative sites were available. It is true that the board members were concerned with the availability of co-location with the city or alternative sites; however, I disagree that these concerns were unrelated to the variance criteria. As is clear from the written record of the board proceedings, the availability of co-location or alternative sites were related directly to whether plaintiff would suffer unnecessary hardship if the variance was denied, as required by both state and local zoning standards. Under Wisconsin law, unnecessary hard-

ship is equated with a showing that there would be no reasonable use of the property in the absence of the variance. *See State v. Kenosha County Board of Adjustment,* 218 Wis.2d 396, 413, 577 N.W.2d 813, 821 (1998). The board had before it the analysis prepared by staff informing the board that, in order for plaintiff to meet the self-imposed hardship standard, it had to show there were no alternatives such as commingling or multiple towers. In staff's view, no hardship to plaintiff would result from the denial of a second tower on Mt. Tom if plaintiff could co-locate with the city on a single tower instead, which was an option the board had previously approved, or if alternative sites would accomplish the same coverage as the desired tower on Mt. Tom. The board's decision reflects this reasoning in the findings of fact wherein it notes that "testimony was received that . . . there are alternative locations and methods for meeting the demand of the APT service." Granted, the board's written decision is not a model of clarity, but plaintiff misses the mark when it argues that the board "cloaked" itself in the language of the statute to hide the real reasons it denied the variance.

The next question is whether the board's decision is supported by substantial evidence. In *Aegerter,* 174 F.3d at 889, the court held that when the drafters of the Telecommunications Act made "substantial evidence" the standard to be used by courts in reviewing decisions of city councils and local zoning authorities, they were referring to the "normal" substantial evidence standard applied by courts when reviewing agency decisions. Under this deferential standard of review, the court reviews the entire record to see whether it contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Dilling Mechanical Contractors, Inc. v. NLRB,* 107 F.3d 521, 524 (7th Cir.1997)).

Although the parties agree that this is the proper standard of review, they disagree whether plaintiff or defendant

bears the burden of establishing that the determination of the board was supported by substantial evidence. None of the circuit courts of appeals has addressed the issue and there is a split among the district courts. *See Cellular Telephone Co. v. Town of Oyster Bay,* 166 F.3d 490, 496 (2d Cir.1999) (noting split among district court authority but declining to decide issue). I conclude that the burden of proof rests with the party seeking to overturn the decision. This is consistent with the deferential standard afforded to agency decisions and with the Seventh Circuit's approval of the "conventional substantial evidence standard" in *Aegerter,* 174 F.3d at 890. In any event, even if defendant were to bear the burden of proof in this case, it would make no difference to the outcome. Under either scenario, defendant would prevail.

Substantial evidence in the record supports the board's conclusion that plaintiff failed to demonstrate that it would suffer unnecessary hardship if the variance was not granted. Namely, although plaintiff presented evidence showing that the city's existing tower was not capable of supporting both the city's and plaintiff's equipment, plaintiff presented no evidence to show that it would be technologically or structurally impossible for plaintiff and the city to co-locate on a single new tower to be constructed by plaintiff. In its briefs before this court, plaintiff does not make a credible argument to the contrary. (The evidence it cites relates to the difficulties that could arise if the city, plaintiff and two other personal communications services companies all co-located on a single tower, an issue that was not of concern to the board.)

Indeed, it is no surprise that plaintiff failed to present such evidence. Plaintiff does not want to share its tower with the city but wants to lease the co-location space to other private telecommunications companies. Plaintiff argues that by allowing for such co-location, its tower would provide revenue to the city and would reduce the threat of tower proliferation in the Eau Claire area: because there are at least two other personal communications services companies licensed to provide service in the Eau Claire area, the board's denial of plaintiff's variance application means that there will be multiple towers built in the area instead of one shared tower on Mt. Tom. Plaintiff contends that the board ignored this fact when considering its variance application.

No matter how sound plaintiff's arguments might be, they do not provide grounds under the Telecommunications Act for upsetting the board's determination. As the court stated in *Omnipoint Communications Enterprises,* 173 F.3d at 15:

> Ultimately, we are in the realm of trade-offs: On one side are the opportunity for the carrier to save costs, pay more to the town, and reduce the number of towers; on the other are more costs, more towers, but possibly less offensive sites and somewhat shorter towers. [Plaintiff] may think that even from an aesthetic standpoint, its solution is best. But subject to an outer limit, such choices are just what Congress has reserved to the town.

*See also Aegerter,* 174 F.3d at 892 ("Some may disagree with Congress's decision to leave so much authority in the hands of state and local governments to affect the placement of the physical infrastructure of an important part of the nation's evolving telecommunications network. But that is what it did when it passed the Telecommunications Act of 1996, and it is not our job to second-guess that political decision.") The question before this court is not whether the board made a wise decision but simply whether there was substantial evidence in the record to support its determination that plaintiff would have a reasonable use of the property if the variance was denied. That standard was met. The evidence before the board showed that plaintiff could build a tower that would support both its and the city's equipment, thereby allowing plaintiff a reasonable use

of its property and removing the need for two towers on Mt. Tom.

Noting that federal and state aviation authorities found that the tower posed no danger to air navigation, plaintiff argues that the board's decision has nothing to do with the purpose of the Airport Height Limitation Ordinance, which is to insure the safety of air navigation near the airport. I disagree. At the first hearing on plaintiff's 1999 variance request, the airport administrator objected to a second tower on Mt. Tom in excess of the height limitation for the reason that it would be another unwanted obstruction to the airspace. Transcript of July 26, 1999, Public Hearing, dkt. # 12, Ex. C–60. During deliberations, board member Robin Walsh expressed a concern that another tower on Mt. Tom was "going to stick up in the air in all kinds of weather and be there for a long time" and board member Robert Hevey expressed a concern about additional interferences to the airspace. Dkt. # 12, Ex. D–104. Thus, although the phrase "air navigation safety" was rarely mentioned at the board meetings, it is clear from the transcripts that staff and at least some members of the board viewed plaintiff's proposed tower as a threat to such safety.

Moreover, the language of the Airport Height Limitation Ordinance does not limit the board's considerations in deciding whether to grant a variance to safety concerns but provides that a variance shall be granted only when there are no other reasonable uses of the property. The ordinance also refers to the general criteria for variances set forth in the county zoning code. Contrary to plaintiff's suggestion, nothing in the language of the ordinance indicates that a variance from the ordinance must be granted if the state and federal aviation authorities determine that the proposed structure would not threaten air navigation safety. That said, there may be cases in which an overly mechanistic application of the "no other reasonable use" standard to a FAA-approved communications tower could violate the Telecommunications Act. *See, e.g., Omnipoint Communications Enterprises,* 173 F.3d at 15–16 (expressing concern about breadth and vagueness of board's criteria for granting variances). This, however, is not such a case.

In sum, substantial evidence in the record supports the board's determination that plaintiff did not meet the hardship standard required for a variance because it failed to establish that it could not co-locate with the city on a single tower. This evidence is sufficient to sustain the board's decision, making it unnecessary to address the other reasons provided by the board, namely, that alternative sites were available or that the plaintiff did not prove that the circumstances surrounding its variance request were unique.

*C. The Board's Decision Does Not Discriminate Unreasonably Among Providers· of Functionally Equivalent Services*

Subsection 332(c)(7)(B)(i)(I) prohibits local governments from "unreasonably discriminat[ing] among providers of functionally equivalent services." Courts have interpreted this provision to mean that a municipality may not affirmatively grant preferential treatment to one provider over another. *See Aegerter,* 174 F.3d at 892; *AT & T Wireless PCS, Inc. v. City Council of Virginia Beach,* 155 F.3d 423, 427 (4th Cir.1998) (finding no evidence that city council had any intent to favor one company over another).

Moreover, the act does not bar all discrimination among providers but only discrimination that is unreasonable. *Sprint Spectrum, L.P. v. Willoth,* 176 F.3d 630, 638–39 (2d Cir.1999); *AT & T Wireless PCS,* 155 F.3d at 427. The legislative history of the act makes this clear:

> [T]he phrase "unreasonably discriminate among providers of functionally equivalent services" will provide localities with the flexibility to treat facilities that create different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning requirements even if those facilities provide functionally equivalent services. For example, the conferees do

not intend that if a State or local government grants a permit in a commercial district, it must also grant a permit for a competitor's 50–foot tower in a residential district.

H.R. Conf. Rep. No. 104–458, at 208 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124, 222. Thus, a municipality may reasonably take the location of the telecommunications tower into consideration when deciding whether to grant an application. *Willoth*, 176 F.3d at 639.

■ The record fails to support plaintiff's claim that the board discriminated against it unreasonably. Plaintiff contends that the board's denial of its variance application leaves a substantial hole in its coverage along the Interstate 95 and Highway 53 corridor and impairs its ability to compete with the cellular operators, who "by virtue of fortuity or because their equipment does not require a stand-alone tower," are currently providing service in the Eau Claire area. However, the record contains no evidence that the board ever considered any other applications by other wireless telecommunications providers, much less an application for a variance from the Airport Height Limitation Ordinance. Plaintiff does not contend that other providers of wireless telecommunications services have applied for such a variance. Without more, the fact that the cellular companies are apparently able to provide coverage in the Eau Claire area without the need for special permits from the board (presumably because their antennas are shorter) falls far short of establishing a claim of unreasonable discrimination under the Telecommunications Act.

Citing *Western PCS II Corp. v. Extraterritorial Zoning Authority*, 957 F.Supp. 1230, 1237–38 (D.N.M.1997), plaintiff contends that a decision that results in inequity among functionally equivalent providers constitutes unreasonable discrimination under the act even if the municipality did not intend to discriminate. In *Western PCS II*, the court found that there was no legitimate basis for the zoning commission to deny a digital service provider's request

to mount an antenna on a water tank and to place equipment cabinets beside the tank on certain property owned by the county of Santa Fe. The court also found that the commission had discriminated unreasonably against Western because the decision hampered Western's ability to compete with its competitors, who were providing analog cellular service in the area that Western sought to serve (Hondo Hills) and along the I–25 corridor. Because there was no legitimate basis in the record for the commission's denial, the court found that it "must conclude that the denial amounts to the 'unreasonable discrimination' prohibited by the Telecommunications Act of 1996." *Id.* at 1237–38.

*Western PCS II* is a decision of another district court and therefore is not controlling on this court. Even if it were, it would not compel a finding that the board discriminated unreasonably against plaintiff in denying its request for a variance. Critical to the court's decision in *Western PCS II* was the absence of any legitimate basis in the record for the commission's denial. In other words, it was not merely the discrimination among competing wireless telecommunications companies that the court found objectionable, it was the *unreasonableness* of the discrimination that prompted the court's conclusion. (For this same reason, the other case relied upon by plaintiff, *US West Communications, Inc. v. City of Vadnais Heights*, No. 97–2248 (ADM/JGL) (D.Minn. May 15, 1998), is also inapposite.) In this case, I have concluded that a legitimate basis exists in the record for the board's denial of plaintiff's request for a variance, namely, the absence of evidence showing that plaintiff and the city could not co-locate their equipment on a single tower on Mt. Tom. Even if I could find that the board's denial of the variance has impeded plaintiff's ability to compete with analog cellular providers in the Eau Claire area (a finding that would be difficult to make from the current record), such discrimination was not unreasonable because there is no evidence that any of plaintiff's competitors

sought to build a tower on Mt. Tom or sought a variance from the height limitation ordinance. Moreover, the board's decision does not prevent plaintiff from constructing any tower on Mt. Tom; it merely prevents it from building a second tower in addition to the existing city communications tower. Indeed, if plaintiff constructed the "shared" tower envisioned by the board, presumably the company would be able to match the coverage being provided by its competitors.[1]

In sum, plaintiff cannot show that the board's decision violated the anti-discrimination provision of the Telecommunications Act.

## D. The Board's Decision Does Not Have the Effect of Prohibiting the Provision of Personal Wireless Services

■ Plaintiff contends that the board's denial of its variance application constitutes an effective ban on personal wireless services, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). Although the clearest violation of this subsection occurs when a local government imposes a blanket prohibition or an outright ban on personal wireless services, see AT & T Wireless PCS, 155 F.3d at 428 (collecting cases), a "decision that de facto bans personal wireless service altogether from an area" may also violate the statute. Aegerter, 174 F.3d at 891. Stated differently, if the criteria applied by a zoning authority or their administration are such that "further reasonable efforts [by the provider] are so likely to be fruitless that it is a waste of time to even try," then they may amount to an effective ban even if there is substantial evidence to support the denial. Omnipoint Communications Enterprises, Inc., 173 F.3d at 14.

Plaintiff argues that the board's denial of its variance application constitutes a de facto ban because Mt. Tom is the only single location in the Eau Claire area that will allow plaintiff to complete a gap in its coverage area. However, plaintiff's argument ignores the fact that the board did not prohibit plaintiff from locating its equipment on a tower on Mt. Tom; it said simply that plaintiff could not build a second tower in addition to the city's communication tower. As noted previously, plaintiff did not establish that co-location with the city on a single tower was not feasible; its representative stated simply that such an option was "not on the table." Thus, it is an overstatement for plaintiff to say that the board denied plaintiff any opportunity at all to site its antennas on Mt. Tom and thereby complete its network. Although plaintiff would prefer to build a second tower that would allow for co-location by other personal communications services companies, its inability to carry out that plan does not mean the end of such services in the Eau Claire area or even that plaintiff will be unable to close a gap in its coverage area. See Aegerter, 174 F.3d at 891 (declining to decide breadth of municipality's duty to insure that wireless services remain available in light of fact that provider could provide service with existing tower, even though such service was inferior to that offered by proposed new tower).

Plaintiff argues that comments by board members reveal that the board had a "generalized hostility" to the placement of communications towers. For instance, board member Robin Walsh stated his concern that if plaintiff's variance was granted, "we would have no assurance that another company wouldn't decide to put in their own tower and their own equipment . . . ." Dkt. # 12, Ex. D–103. And board member Robert Hevey expressed his preference for two towers at alternative sites, stating:

> So I think, ah, that's one way they should be looking at rather than going, putting another tower up on top of Mt. Tom because eventually what we're going to end up doing if we put the one, we're going to have to put a second one because there are other licenses out there.

---

1. I recognize that there is no evidence in the record that plaintiff and the City of Eau Claire ever reached a co-location agreement or are still interested in doing so.

*Id.* Contrary to plaintiff's interpretation, these comments do not evince a generalized hostility to wireless service facilities but rather indicate the board's concern with a proliferation of towers on Mt. Tom exceeding the airport height limitation. *See Aegerter,* 174 F.3d at 891 (act's prohibition on bans does "not mean that every municipality must have towers wherever anyone wants to put them"). There is no indication from the board members' comments that the board would reject all future attempts by plaintiff or a different wireless telecommunications company to obtain a variance from the height limitation ordinance on a site other than Mt. Tom. Accordingly, plaintiff's claim that the board's decision violates § 332(c)(7)(B)(i)(II) is unfounded.

### E.  *Conclusion*

The decision of the board to deny plaintiff's application for a variance from the height limitation ordinance did not violate the Telecommunications Act. Although the board's decision may mean a loss of revenue for plaintiff and the city and may require plaintiff to construct multiple towers to achieve the coverage it desires, nothing in the act requires a local zoning authority to allow wireless telecommunications companies to construct towers in the locations of their choice or to maximize their profits. The board concluded from substantial evidence in the record that plaintiff had alternatives available that would allow it to complete its coverage gap without the need to impose an additional obstruction to the airspace above Mt. Tom.

With the conclusion that defendant did not violate the Telecommunications Act, plaintiff's request for an award of attorney fees and damages under 42 U.S.C. § 1983 becomes moot.

### ORDER

IT IS ORDERED that the motion of plaintiff APT Minneapolis, Inc. for summary judgment is DENIED. The motion of defendant Eau Claire County for summary judgment is GRANTED. The clerk is directed· to enter judgment in favor of defendant and close this case.