**AT & T WIRELESS SERVICES OF FLORIDA, INC., d/b/a AT & T Wireless Services, Plaintiff,**

v.

**ORANGE COUNTY, a political subdivision of the State of Florida, Defendant.**

**No. 96–1325–CIV–ORL–3ABF18.**

United States District Court, M.D. Florida, Orlando Division.

Nov. 14, 1997.

Darryl M. Bloodworth, Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., David S. Oliver, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Orlando, FL, for plaintiff.

Paul Henry Chipok, Orange County Attorney's Office, A. Bryant Applegate, Linda Sue Brehmer Lanosa, Orlando, FL, for defendants.

## OPINION AND ORDER

BAKER, United States Magistrate Judge.

This cause comes before the Court for final decision[1] upon the record established in proceedings before Orange County, following extensive briefing and oral argument. Plaintiff, AT & T Wireless Services of Florida, Inc. (herein "AT & T"), seeks injunctive relief under Section 704 of the Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 332(c)(7)(B), against the Orange County Board of County Commissioners ("the Board"), following the Board's denial of AT & T's application for a special exception and variance to obtain a building permit to erect a 99 foot communications tower in a residential area in unincorporated Orange County. At issue is whether the Board's denial violates the Act and warrants injunctive or other relief. The Court finds the Act was violated, but injunctive relief mandating issuance of the building permit is not warranted at this time.

## Background

There is no dispute as to the record created in the proceedings leading up to the decision by the Board. On July 17, 1996, AT & T applied to the Board of Zoning Adjustment (the "BZA") for a special exception and variance[2] to construct a 135–foot steeple with concealed cellular antenna and equipment station on the property of a church in a residential neighborhood of Orange County. Due to the height of the proposed tower, and its proximity to single family homes, a special exception and variance were necessary, as the proposed tower did not meet the setback and height requirements of the Orange County Code (herein "the Code"). A public hearing was held before the BZA on September 5, 1996, at which AT & T presented written evidence of its need for an antenna in the Corrine Drive area. The BZA continued the hearing, and requested that AT & T hold a community meeting to allow residents to voice their concerns and provide input on the proposal.

AT & T held two community meetings, and subsequently redesigned the proposed tower by reducing it in height, footprint and overall mass. AT & T submitted the redesigned plans to the BZA at the second BZA hearing, on October 3, 1996. The BZA unanimously denied AT & T's application, stating:

1. Pursuant to 28 U.S.C. § 636, the parties consented to consideration and disposition of the case by the United States Magistrate Judge.

2. Based on Orange County's Code, both the special exception and variance are necessary for construction authorization. The criteria for obtaining these two items under Florida law differ in some respects. For present purposes only, this opinion will conflate the two, recognizing that it may be necessary to consider them separately in subsequent proceedings. Thus, references herein to "special exception" should be understood to include the variance request as well.

DECISION: Denied the Special Exception request in that the [BZA] finds it does not met [sic] the requirements governing Special Exceptions as spelled out in Orange County Code, Section 30–43(d), and Denied the Variance request in that there was no unnecessary hardship shown on the land; and further, it did not meet the requirements governing Variances as spelled out in Orange County Code, Section 30–43(3)(g). (unanimous)

AT & T appealed to the Board. Prior to the hearing on the appeal, AT & T held a third community meeting, and agreed to install a landscape buffer to shield the neighbors' view of the steeple. On November 12, 1996, the Board heard the appeal of the BZA denial of the application for special exception and variance. AT & T presented the Board with substantial written evidence regarding the need for a tower in that particular area, detailed in a diagram of AT & T's search ring. In addition to unincorporated Orange County, the area in question includes parts of the City of Winter Park, a public school under the jurisdiction of the School Board, and parts of the City of Orlando (including the United States Army Reserve Center and other property owned by the federal government which until recently served as the United States Naval Training Center.[3])

On November 20, 1996, the Board issued its decision on the appeal, reading in its entirety:

On November 12, 1996, the Board of County Commissioners heard an appeal filed by Patrick B. King of the October 3, 1996 decision of AT & T Wireless Services and Corrine Drive Baptist Church, Item 22, on property which is generally located at 3201 Corrine Drive, District 5, Orange County, Florida.

Upon a motion by Commissioner Donegan, seconded by Commissioner Freeman, and carried with all present members voting aye by voice vote; Commissioners Johnson and Hoenstine were absent; the Board upheld the decision of the Orange County Board of Zoning Adjustment and denied the request by AT & T Wireless Services

and Corrine Drive Baptist Church for a special exception in a single-family dwelling district (R–1AA) to erect a church steeple 135 feet in height with an internally concealed (camouflaged) communications tower (monopole) 127 feet in height; and a variance to erect a concealed (camouflaged) communications tower 150 feet from a single-family residence in lieu of 381 feet; on the above-described property.

This action challenging the denial promptly followed.

## Jurisdiction

Generally, this Court has no jurisdiction to entertain appeals of local zoning and land use decisions. However, AT & T's claim arises under § 704 of the Telecommunications Act of 1996, which expressly permits "[any person adversely affected by any final action or failure to act by a ... local government ... that is inconsistent with this subparagraph may ... commence an action in any court of competent jurisdiction.]" 47 U.S.C. § 332(c)(7)(B)(v). Thus, this Court has jurisdiction pursuant to 28 U.S.C. § 1331, which grants district courts original jurisdiction over all civil actions arising under the laws of the United States.

### The Telecommunications Act of 1996

The Act provides, in pertinent part:

(7) **Preservation of local zoning authority**

(A) **General Authority**

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government ... over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B) **Limitations**

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government ...

---

**3.** The Court takes judicial notice that the Naval Training Center property is in a transition phase, following the decision to close the Center as a military facility.

**(I)** shall not unreasonably discriminate among providers of functionally equivalent services; and

**(II)** shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

. . . . . .

**(iii)** Any decision by a State or local government . . . to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47 U.S.C. § 332(c)(7)(B).

AT & T contends that the Board violated the Act in that 1) it did not render a written decision supported by substantial evidence contained in a written record and 2) the decision has the effect of prohibiting the provision of personal wireless communications. AT & T also argues that its application met the requirements for a special exception or variance, under the Code and Florida law. The Board argues that its decision meets all the requirements of the Act, and the application was properly denied as violative of the Code and due to AT & T's failure to show a special hardship to the land.

### Requirement of a Written Decision

Under the Act, the Board's decision to deny AT & T's application must be in writing and supported by substantial evidence contained in a written record. Merely putting the word "Denied" on a piece of paper is not sufficient to meet the requirements of this provision; the decision must contain written findings of fact tied to the evidence of record. *See Western PCS II Corp. v. Extraterritorial Zoning Authority of the City and County of Santa Fe,* 957 F.Supp. 1230 (D.N.M.1997); *Illinois RSA No. 3, Inc. v. County of Peoria,* 963 F.Supp. 732 (C.D.Ill.1997); *AT&T Wireless PCS, Inc. et al. v. City of Virginia Beach,* 979 F.Supp. 416 (D.Va.1997). While the Board's denial

(quoted above) is in writing, it contains no findings of fact, citations to evidence, or any other explanation as to why the application was denied. Absent the most rudimentary explanation for the Board's decision, the Court cannot conduct the review mandated by the Act.[4] This ground alone is sufficient to quash the Board's decision.

The Board argues that its written decision need not contain separate written findings because, in "upholding" the BZA decision, the Board necessarily incorporated the reasons set forth in various staff recommendations and in the BZA decision itself. As the BZA decision states that the proposed tower did not meet Code requirements and AT & T did not show unnecessary hardship on the land, according to the Board, additional findings were not required. The Court rejects this argument.

The phrase "the Board upheld the decision" is descriptive of an action the Board took; it does not purport to describe why the Board took such an action. While the Board may well have meant to adopt every word and nuance of the BZA decision and staff recommendations as its decision[5], it is equally possible that the Board acted for other unexpressed reasons; reasons that may, or may not, constitute "substantial evidence contained in a written record" under the Act.

Absent an expressed rationale for review, the Court is left to sift through the record below in hopes of ascertaining the Board's rationale, so that the Court can determine if there is substantial evidence to support it. AT & T argues that it presented competent evidence to the Board that its application met each of the criteria listed in the Code for award of a special exception, and recites that evidence in detail in its papers. The Board counters that contention, interpreting the evidence in a different light. Without any factual findings set forth by the Board as its decision, such discussion is academic.

---

**4.** According to the legislative history, Congress intended courts to utilize "the traditional standard used for judicial review of agency actions." HR. Conf. No. 104–458, 104th Congress, 2d Sess. 208 (1996).

**5.** The Court notes that even if this were true, the BZA decision itself is bare-bones and arguably does not meet the written findings of fact requirement under the Act. Due to the remedy this Court grants here today, however, we need not reach that conclusion.

Requiring the Board to state its reasons is essential to maintain the balance created by the Act. Congress has created a national mandate for more favorable land use regulation pertaining to wireless communications. That mandate is neither absolute nor unlimited, however. Congress did not supplant, in general, local decision-making prerogatives. At the same time, local governments may not mask hostility to wireless communications facilities with unreasoned denials that make only vague references to applicable legal standards. The procedural requirement of a written decision with articulated reasons based on record evidence forces local governments to rely on supportable neutral principles if they wish to deny a particular wireless installation.

It is not the Court's province to ferret out reasons either to support or deny the application for the proposed tower. This Court serves as a court of review, under the Act. Because the Board failed in its responsibility to support its written denial with written findings of fact, the decision cannot stand and there is nothing left, at this point, for this Court to review.[6] Thus, the Court declines, at this juncture, to address AT & T's claims that it is entitled to the special exception under Florida law.

### Prohibiting Wireless Services

■ AT & T argues that the Board's action has the effect of prohibiting the provision of personal wireless communications services, in violation of the Act. The Court disagrees. While the Board's action certainly prohibited the construction of this proposed tower, the record does not indicate a general hostility to *any* tower in the area. *See AT&T v. Virginia Beach, supra* (finding that § 332(c)(7)(B)(i)(II) is intended to limit only general bans or policies that prohibit or have the effect of prohibiting the provision of personal wireless services). At & T is not entitled to relief on this ground.

### Remedy

■ AT & T has requested relief in the form of an injunction requiring the Board to approve AT & T's request for a special exception and requiring the Board to expedite the approval of the permits necessary for AT & T to construct the proposed tower. In support of this request, AT & T cites to other District Court opinions granting similar injunctive relief. This case is distinguishable.

In *BellSouth Mobility, Inc. v. Gwinnett County, Georgia*, 944 F.Supp. 923 (N.D.Ga. 1996), the application to erect a 197 foot tower on property zoned commercial was *approved* by the Planning and Development department, but denied, without any comment, by the Gwinnet Board. The *BellSouth* applicant had met all the requirements for a tall structure permit, as evidenced by the P & D approval.

In *Illinois RSA No. 3 v. County of Peoria*, 963 F.Supp. 732, 745 (C.D.Ill.1997), the application for a special use permit to build a monopole was *approved* by the Planning and Zoning Department, and the Peoria Land Use Committee of the County Board, and the Peoria Zoning Board of Appeals, but denied, without written explanation, by the Peoria County Board.

In *Western PCS II v. Extraterritorial Zoning Authority of the City and County of Santa Fe*, 957 F.Supp. 1230 (D.N.M.1997), the application for special exception to mount antennas on a water tank was *unanimously approved* by the Extraterritorial Zoning Commission, prior to being denied by the EZA.

In *AT & T Wireless PCS, Inc. v. The City of Chamblee*, —— F.Supp. —— (N.D.Ga. August 28, 1997) (attached as an appendix to Plaintiff's brief), the Plaintiff applied for a permit to construct a 140–foot tower on property zoned "light industrial." The request was denied by the City Manager and, subsequently, the City Council. The City had a specific ordinance authorizing the placement of towers on property zoned industrial as

---

**6.** This is not to say that AT & T's arguments are irrelevant; rather that they are stated prematurely. Until the Board states its reason for its action, the Court cannot review whether there is substantial evidence to support those reasons.

Of course, once the Board renders its written findings, as required by this Order, the issue of substantial evidence ripens, allowing for meaningful review on the merits.

long as certain requirements are met. As the *Chamblee* court noted, it was undisputed that the application demonstrated compliance with all of these requirements. (Pg. 6 of the Appendix to Plaintiff's brief). Such is not the case here.

At no time has there been a finding, or an admission, by any local authority that the AT & T application complies with the requirements of the Code. At all times, the County has found that the application does *not* comply with the Code, and has not met the requirements for a special exception. While this conclusion may be in error, AT & T cites no case where a court ordered a local government to overrule its zoning board and allow the placement of a tower in a residential area that admittedly violates Code height restrictions and setback requirements. Due regard for the preserved "authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities" under Section 332(c)(7) of the Act, includes appropriate deference to the traditional decision making prerogatives of local governments. By this provision, it is clear that the Act was not intended to completely preempt the authority of local governments to regulate, to some extent, the placement and construction of cellular towers. Historically, local development and zoning powers have yielded to federal interests, via the Supremacy Clause,[7] when

1) Congress, acting pursuant to its enumerated powers, expressly preempts state law (*See Jones v. Rath Packing Co.*, 430 U.S. 519, 524–525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977); 2) Congress implicitly intends to completely occupy a field to the exclusion of state law (*See Fidelity Federal Savings & Loan Assn. v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)(intent evident by pervasive regulatory scheme); 3) state law conflicts with federal law (*See Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248 (1963) (impossible to comply with both federal and state law): or 4) state law "stands as an obstacle to the accomplish-

ment and execution of the full purposes and objectives of Congress", *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

*Williams v. City of Columbia,* 707 F.Supp. 207 (D.S.C.1989).

Here, there is no express preemption and no pervasive regulatory scheme (as to facility location and characteristics); nor can it be fairly argued that compliance with both federal and state law is an impossibility. While AT & T seems to argue that local decisions denying towers conflict with federal law when state law stands as a stumbling block to the Congress' objective of encouraging the rapid development of advanced telecommunications, Congress clearly disavowed such an intention.

According to the legislative history, "[t]he conference agreement creates a new section 704 which prevents [Federal Communications] Commission preemption of local and State land use decisions and preserves the authority of State and local governments over zoning and land use matters except in the limited circumstances set forth in the conference agreement.... The intent of the conferees is to insure that a State or local government does not in making a decision regarding the placement, construction and modification of facilities of personal wireless services described in this section unreasonably favor one competitor over another. The conferees also intend that the phrase 'unreasonably discriminate among providers of functionally equivalent services' will provide localities with the flexibility to treat facilities that create different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning requirements even if those facilities provide functionally equivalent services. For example, the conferees do not intend that if a State or local government grants a permit in a commercial district, it must also grant a permit for a competitor's 50 foot tower in a residential district." H.R. Conf. Rep. No.104–458, 104th Cong., 2d Sess. 208 (1996), 1996 U.S.C.C.A.N. 124, 221–222.

---

**7.** United States Constitution, article VI.

Even with the limitations imposed on the Board by the Act, the Board retains considerable authority over the placement of and requirements for a proposed tower. Given the traditional judicial deference accorded to local land use regulations, the Court is loathe to trespass on that authority, at this time. An injunction mandating the issuance of a special exception is inappropriate on this record.

The Court finds that the Board violated the Act by failing to set forth written findings of fact, based on substantial evidence contained in a written record, supporting its decision. The Board shall have 35 days to provide such a written decision; after which the Court will perform an expedited review, as contemplated by the Act, of the merits. Should the Board fail to provide the written findings, or should the findings fail to be supported by written substantial evidence, the Court may order an immediate approval of the application or such other relief as may be appropriate.

The Court retains jurisdiction of this matter, until disposition on the merits.

### CONCLUSION

AT & T's petition is **GRANTED, in part** and **DENIED, in part.** The Board shall submit written findings of fact, in compliance with the Act, within 35 days of the date of this Order, subject to further proceedings in this Court.