**SBA COMMUNICATIONS, INC.**

v.

**ZONING COMMISSION OF THE TOWN OF FRANKLIN**

No. 3:00CV810.

United States District Court, D. Connecticut.

July 19, 2001.

J. Daniel Sagarin, Margaret E. Haering, John W. Knuff, Hurwitz & Sagarin, Milford, CT, for SBA Communications, Inc, plaintiff.

Stephen P. Fogerty, Robert Avery Rhodes, Halloran & Sage, Westport, CT, Ronald F. Ochsner, Berberick, Murphy & Whitty, Norwich, CT, for Franklin Planning & Zoning Comm, defendant.

### RULING ON MOTION FOR
### SUMMARY JUDGMENT

NEVAS, District Judge.

This action is an appeal by SBA Communications, Inc. ("SBA") of a decision

rendered by the Town of Franklin's Zoning Commission (the "Commission") which denied SBA's application for a special permit to construct a personal wireless telecommunications facility in Franklin. SBA seeks a declaratory judgment that the Commission violated § 704 of the Telecommunications Act of 1996, 47 U.S.C. § 332 ("TCA"), a judgment granting its application for a special permit, a permanent injunction, and costs and attorneys fees pursuant to 42 U.S.C. § 1988.

Now pending before the court are SBA's and the Commission's cross-motions for summary judgment. For the following reasons, SBA's motion [doc. # 27] is GRANTED and the Commission's motion [doc. # 33] is DENIED.

## FACTS

SBA, a Florida corporation with offices in Glastonbury, Connecticut, provides service to various licensed personal wireless telecommunications carriers in Connecticut by locating, leasing, zoning, constructing and owning personal wireless telecommunications facilities. SBA determined that all cellular and PCS carriers provide inadequate or nonexistent service in the northern part of Franklin. SBA determined a target area or "search ring" within which its facility had to be located in order to enable carriers to eliminate coverage gaps. SBA entered into a lease with Anne, John and Eugene Ayer to construct a personal wireless facility, including a monopole ("the Facility"), at 36 Ayer Road, Franklin, Connecticut ("the Property"), which is within the search ring.

SBA selected the Property for the proposed Facility because: (1) it had an elevation of 535 feet, which is needed to enable radio waves to clear tall trees, hillsides and to link up with antennas located on nearby towers to the north and south of the proposed site; (2) the Property is located

within an R–120 zone, in which telecommunications towers and antennas are permitted subject to special exception and site plan review; (3) the Property is a 264–acre parcel with an existing trail that could be improved to provide access to the monopole without extensive clearing of trees; and (4) the Property is such that there would be minimal visual impact on surrounding parcels.

In January, 2000, SBA applied to the Commission for a special permit to build the Facility that consisted of a 150–foot monopole and associated base station equipment, all of which would be contained in a fenced-in area. On February 15, 2000, the Commission held a public hearing to consider SBA's application. The hearing was continued over two additional public sessions and was eventually closed on April 11, 2000. On April 11, 2000, the Commission denied SBA's application. It notified SBA of its decision by letter dated April 20, 2000.

### The Telecommunications Act

The TCA was enacted " 'to provide a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services ... by opening all telecommunications markets to competition ....' " *Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 492–93 (2d Cir.1999) (quoting H.R. Conf. Rep. No. 104–458, at 206 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 124). Recognizing that the expanding telecommunications industry requires construction of wireless facilities, including communications towers, and that local governments are called upon to determine whether such structures may be built, Congress enacted section 704 of the TCA, codified at 47 U.S.C. § 332, to regu-

late, in part, this procedure.[1] Section 332 provides for judicial review of any local decision denying a request to "place, construct or modify," wireless service facilities. Specifically, any person adversely affected by a state or local decision inconsistent with the requirements of § 332 may commence an action to review that decision. The statute provides for prompt judicial review allowing the party adversely affected to commence an action within 30 days of the adverse determination in any court of competent jurisdiction. *See* 47 U.S.C. § 332(c)(7)(B)(v).

In enacting § 332, Congress sought to strike a balance between encouraging the growth of telecommunications systems and the right of local governments to make land use decisions. Encouragement of the growth of the telecommunications industry is fostered by the TCA's requirement that local authorities act on any request for authorization to construct personal wireless service facilities within a "reasonable

period of time." *Id.* at § 332(c)(7)(B)(ii). Further, in regulating the "placement, construction, and modification" of wireless services facilities local governments are expressly prohibited from: (1) unreasonably discriminating among providers of functionally equivalent services, and (2) prohibiting or having the effect of prohibiting the provision of personal wireless services. *See id.* at § 332(c)(7)(B)(i)(I) and (II).

While requiring review of local zoning determinations regarding the placement of wireless facilities, the TCA and the courts interpreting this statute acknowledge the legitimate local interest in such determinations. As the Second Circuit recently noted in *Sprint Spectrum, L.P. v. Willoth,* 176 F.3d 630 (2d Cir.1999), the goals of increasing competition and "rapid deployment of new technology" do not "trump all other important considerations, including the preservation of the autonomy of states

---

1. 47 U.S.C. § 332(c)(7) provides as follows:

Preservation of local zoning authority

(A) General authority

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B) Limitations

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—(I) shall not unreasonably discriminate among providers of functionally equivalent services; and (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulation concerning such emissions.

(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

and municipalities." *Id.* at 639. Rather, "[i]n the context of constructing a national wireless telecommunications infrastructure, Congress chose to preserve all local zoning authority 'over decisions regarding the placement, construction, and modification of personal wireless service facilities,' 47 U.S.C. § 332(c)(7)(A), subject only to the limitations set forth in § 332(c)(7)(B)." *Willoth,* 176 F.3d at 639–40. The legislative history of the TCA illustrates the importance of preserving local land use authority. As stated in the Senate Report, § 332 "preserves the authority of State and local governments over zoning and land use matters except in the limited circumstances" specified in that section. *See* Sen. Rep. No. 104–230, at 458 (1996).

## DISCUSSION

The Commission moves for summary judgment on three grounds: (1) that it lacks jurisdiction to grant SBA's application for a special exception; (2) that there is no evidence to support SBA's prohibiting services claim; and (3) that the substantial evidence requirement of the TCA is unconstitutional. SBA in return argues that it is entitled to summary judgment because the Commission's denial of its application violated the TCA because it was not in a writing and the decision was not supported by substantial evidence.

I. *Connecticut Siting Council Jurisdiction*

■ The Commission contends that it does not have jurisdiction over the siting of SBA's proposed Facility because the Connecticut Siting Council (the "Siting Council") has exclusive jurisdiction over Personal Communication Service ("PCS") towers. The court disagrees.

The Siting Council is an administrative agency of the State of Connecticut that has exclusive jurisdiction over the siting of certain kinds of facilities as defined in § 16–50i(a). *See* Conn. Gen.Stat. § 16–50x. In particular and relevant to this case, the Siting Council has exclusive jurisdiction over "such telecommunications towers, including associated telecommunications equipment ... used in a cellular system, as defined in the Code of Federal Regulations Title 47, Part 22, as amended ...." Conn. Gen.Stat. § 16–50i(a)(6). Thus, the key question for the court is whether a telecommunications tower providing PCS coverage is a tower "used in a cellular system, as defined in the Code of Federal Regulations Title 47, Part 22, as amended ..." within the meaning of Conn. Gen. Stat. § 16–50i(a)(6).

"The starting point for [the court's] interpretation of a statute is always its language." *Community For Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). A court must "assume that the legislative purpose is expressed by the ordinary meaning of the words used." *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982) (quotation marks and citations omitted). If that language is plain and its meaning sufficiently clear, the court need look no further. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Only if the text of the statute is not unambiguous does the court turn for guidance to legislative history and the purposes of the statute. *See Dowling v. United States,* 473 U.S. 207, 218, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985). In addition, it is a well-settled rule of statutory construction that "courts should disfavor interpretations of statutes that render language superfluous." *Willoth,* 176 F.3d at 640.

PCS did not exist when Conn. Gen.Stat. § 16–50i(a)(6) was first enacted in 1984. PCS was introduced through the issuance

of a new category of wireless licenses by the Federal Communications Commission ("FCC") pursuant to the Omnibus Budget Reconciliation Act of 1993, Pub.L. No. 103–66, Title VI, §§ 6001–6002, 107 Stat. 312, 379–92. Although there is overlap between the types of services, PCS and cellular service are two distinct types of wireless service.

Cellular service and PCS are treated separately under the FCC's regulations. Cellular service is defined and discussed in Title 47, Part 22 of the Code of Federal Regulations. By contrast, PCS is defined and discussed in Title 47, Part 24 of the Code of Federal Regulations. In addition, Part 24 includes a comprehensive set of regulations relating to PCS licensing, technical standards, frequencies and the like.

Based on these definitions and the separate treatment of PCS and Cellular Service by the FCC, the court concludes that the language and meaning of § 16–50i(a)(6) does not include PCS. Under Conn. Gen.Stat. § 16–50x, the Siting Council only has exclusive jurisdiction over telecommunications towers, including associated equipment, used in a "cellular system", as defined in C.F.R. Title 47, Part 22. Because PCS systems are not included within Part 22, but are treated independently by the FCC under C.F.R. Title 47, Part 24, § 16–50i(a) does not confer exclusive jurisdiction over them to the Siting Council.

In reaching this conclusion the court notes that when the statute was amended in 1994 and 1999 PCS systems were in existence and were regulated by C.F.R. Title 47, Part 24. It is thus apparent that the Connecticut legislature could have in-

cluded PCS in the coverage of the Siting Council's jurisdiction pursuant to § 16–50i(a)(6), had it wished to do so.[2]

Accordingly, the court concludes that the Siting Council does not have exclusive jurisdiction pursuant to § 16–50i(a) over the siting of facilities providing personal communication service.

## II. The Prohibiting Services Claim

The Commission next asserts that it is entitled to summary judgment on SBA's prohibiting services claim because there is no evidence of a general ban or policy that has the effect of prohibiting wireless service. The court disagrees.

Section 332(c)(7)(B)(i)(II) states that local authorities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." The Second Circuit has held that "the [TCA's] ban on prohibiting personal wireless services precludes denying an application for a facility that is the least intrusive means for closing a significant gap in a remote user's ability to reach a cell site that provides access to land-lines." *Willoth*, 176 F.3d at 646. In other words, local governments must allow service providers, like SBA, to fill gaps in the ability of wireless telephones to have access to land-lines. *See id.*

As the Second Circuit recently explained, a local government may reject an application for construction of a wireless service facility in an under-served area without thereby prohibiting personal wireless services if the service gap can be closed by less intrusive means. *See Town of Amherst*, 173 F.3d at 14 (explaining that

2. Moreover, if the court were to treat PCS systems as being within the definition of "cellular service" under Part 22, then Part 24 would be rendered redundant or superfluous. In other words, if the FCC intended PCS and cellular services to be treated alike, it could have simply regulated PCS as a type of cellular service and included it within the coverage of Part 22.

"individual denial is not automatically a forbidden prohibition," but disallowing "the only feasible plan ... might amount to prohibiting personal wireless service."). There are numerous ways to limit the aesthetic impact of a cell site. It may be possible to select a less sensitive site, *see Gearon & Co. v. Fulton County,* 5 F.Supp.2d 1351, 1355 (N.D.Ga.1998), to reduce the tower height, *see Town of Amherst,* 173 F.3d at 14–15, to use a preexisting structure or to camouflage the tower and/or antennae, *see, e.g., Cellco,* 3 F.Supp.2d at 185, 186 (D.Conn.1998) (describing antennae placed on water tower, and permitting applicant to reconstruct church steeple with six antennae placed inside); *Smart,* 995 F.Supp. at 59 (D.Conn. 1998) (describing an antenna placed on a billboard and current applicant seeking to conceal tower with seven evergreen trees). A local government may also reject an application that seeks permission to construct more towers than the minimum required to provide wireless telephone services in a given area. A denial of such a request is not a prohibition of personal wireless services as long as fewer towers would provide users in the given area with some ability to reach a cell site.

Here, the Commission's contention that SBA must prove a general ban on wireless service in the Town of Franklin to prevail is without merit based on the Second Circuit' ruling in *Willoth.* Nonetheless, based on the present record, the court cannot determine whether the Commission's denial of SBA's application violates subsection (B)(i)(II)'s ban on prohibiting personal wireless services. It is not clear for purposes of this claim whether a monopole in a commercial or industrial district would fill the gaps in coverage. Nor is it clear based on the present record whether the gaps in coverage are significant or merely de minimis. Consequently, the court cannot conclude whether SBA's proposed monopole is the least intrusive means for closing gaps in coverage within the Town of Franklin.

Accordingly, the Commission's motion for summary judgment on SBA's prohibition of services claim is denied.

## III. *Constitutionality of Substantial Evidence Standard*

■ The Commission also contends that the substantial evidence standard contained in § 332(c)(7)(B)(iii) is unconstitutional under the Tenth Amendment because it infringes upon the power of a municipality to regulate land use by forcing local governments to adopt a federal standard of review. This claim is without merit.

The Tenth Amendment assures the system of dual sovereignty inherent in the constitutional structure, by reserving to the states or the people the powers not delegated by the Constitution to the United States. *See Printz v. United States,* 521 U.S. 898, 918–19, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997). The federalist constitutional structure depends on this separation and independence of sovereigns, *see Gregory v. Ashcroft,* 501 U.S. 452, 458, 111 S.Ct. 2395, 115 L.Ed.2d 410, (1991), and rejects the theory that the states are auxiliary to the federal government's exercise of power. Indeed, the dual-sovereignty structure of the Constitution carefully preserves two, concurrent sovereigns over the people: [T]he Framers rejected the concept of a central government that would act upon and through the States, and instead designed a system in which the state and federal governments would exercise concurrent authority over the people—who were, in Hamilton's words, "the only proper objects of government." *Printz,* 521 U.S. at 919–20, 117 S.Ct. 2365, 138 L.Ed.2d 914 (quoting The Federalist No.

15); *see also Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (noting "[b]y splitting the atom of sovereignty, the founders established two orders of government, each with its own direct relationship, its own privity, its own set of mutual rights and obligations to the people who sustain it and are governed by it") (internal quotation marks and citations omitted). Accordingly, "the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions." *New York v. United States*, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992).

Here, § 332(c)(7)(B)(iii) does not commandeer local authorities to administer a federal program in violation of the federalism principles embodied in the Tenth Amendment and set forth in *New York* and *Printz*. State and local governments are not required to approve or prohibit anything. Indeed, § 332(c)(7), titled "[p]reservation of local zoning authority" states in relevant part: "Except as provided in this paragraph, nothing, in this Act [ ] shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A).

Plainly stated, the rule for review by the federal courts in such cases as this appears to be that the placement of personal wireless facilities is, in nearly all cases, a matter of State or local government land use laws except in the limited circumstances set forth in 47 U.S.C. § 332(c)(7). Those limited circumstances are: the local land use law shall not unreasonably discriminate among providers of functionally equivalent services and shall not prohibit or have the effect of prohibiting the provision of personal wireless services, (B)(i)(I–II); the State or local government shall act on any request with respect to such facilities within a reasonable period of time, (B)(ii); a decision of a State or local government with respect to placement shall be in writing and supported by substantial evidence contained in a written record, (B)(iii); and no State or local government may regulate the placement of such facilities on the basis of environmental effects of radio frequency emissions if such emissions comply with the Commission's regulations, (B)(iv).

The substantial evidence requirement element in the statute means substantial evidence to support the decision of the State or local government authority under state law. So, if a local law requires a personal wireless facility to comply with certain conditions, the federal statute, § 332(c)(7), protects the decision of the local authority with respect to the placement, construction or modification of such a facility unless that decision is contrary to one of the limitations mentioned above. The legislative history provides that § 332(c)(7) was created to preserve the authority of State and local governments over zoning and land use matters except in limited circumstances. *See* H.R. Conf. Rep. No. 104–458, at 207–08 (1996), reprinted in 1996 U.S.C.C.A.N. 142, 222.

Moreover, § 332(c)(7)'s legislative history contains other manifestations of Congress's intent that local and state land use and zoning decisions be tested under local standards. For example, the legislative history points out: (1) all Commission [Federal Communications Commission] rulemaking concerning the preemption of local zoning authority should be terminated; (2) the non-discrimination clause provides localities with flexibility to treat facilities as permitted under "generally applicable zoning requirements"; and (3) the reasonable time

requirement for action on a zoning request application is to be within "generally applicable time frames for zoning decision[s]." H.R. Conf. Rep. No. 104–458, at 208–209, reprinted in 1996 U.S.C.C.A.N. at 222–23. Nothing in § 332(c)(7) or in its legislative history gives a federal court power to substitute its judgment for that of the local zoning authorities. While judicial review may be sought for those decisions that fail to comply with procedural and substantive limitations, however, courts are not free to substitute their own judgment for that of State and local governments, even if they come to a different conclusion after looking at the evidence. *See Cellular,* 166 F.3d at 494. Consequently, when making land use and zoning decisions, state and local governments are not required to approve or prohibit anything. Rather, all that is required is that land use and zoning decisions based on local standards be supported by substantial evidence.

Moreover, a recent Second Circuit opinion is instructive on this issue. *See Cellular Phone Taskforce v. FCC,* 205 F.3d 82, 96 (2d Cir.2000). In *Cellular Phone,* the Second Circuit upheld the constitutionality of § 332(c)(7)(B)(iv), which prohibits state or local regulation of personal wireless facilities based on the environmental effects of radio frequency emissions. "[W]here Congress has the authority to regulate private activity under the Commerce Clause, [the Supreme Court] ha[s] recognized Congress' power to offer States the choice of regulating that activity according to federal standards or having state law pre-empted by federal regulation." *New York,* 505 U.S at 167, 112 S.Ct. 2408; *see also City of New York v. United States,* 179 F.3d 29, 35 (2d Cir.1999). Based on this language, the Second Circuit stated: "We have no doubt that Congress may preempt state and local governments from regulating the operation and construction of a national telecommunications infrastructure, including construction and operation of personal wireless communications facilities." *Cellular Phone,* 205 F.3d at 96; *see also City of New York,* 486 U.S. at 63–64, 108 S.Ct. 1637; *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 698–700, 104 S.Ct. 2694, 81 L.Ed.2d 580. The Second Circuit's opinion recognized the breadth of Congress's power to impose federal limits on local government decision making with respect to wireless facilities and thus that reasoning is applicable to this case.

Accordingly, because the only onus placed on state and local governments exercising their local power is that a decision by a state or local government concerning the placement, construction or modification of personal wireless facilities must be in writing and supported by substantial evidence, the statute does not violate the Tenth Amendment.[3]

## IV. *The Writing Requirement*

SBA asserts that judgment should enter on its behalf because the Commission's decision was not in writing. In response,

---

**3.** The Commission's reliance on a Fourth Circuit opinion in *Petersburg Cellular Partnership v. Nottoway County,* 205 F.3d 688 (4th Cir. 2000), in support of its position that the substantial evidence requirement violates the Tenth Amendment is misplaced. That case was a per curiam opinion reversing the district court's finding that the zoning authority's denial of a wireless siting application was not supported by substantial evidence. *Notto-*

*way County,* 205 F.3d at 691. The view that the substantial evidence requirement found in § 332(c)(7)(B)(iii) was unconstitutional is contained in a section of Judge Niemeyer's opinion, which neither of his colleagues endorsed. *See id.* at 707. Consequently, the Fourth Circuit has not found the substantial evidence requirement unconstitutional under the Tenth Amendment.

the Commission maintains that it has fully complied with the provisions of the TCA.

■ Among the limitations on local authorities contained in § 332 is the requirement that any denial of a request to build a wireless facility must be in writing. *See* § 332(c)(7)(B)(iii). The TCA requires a written decision to enable a reviewing court to analyze the zoning authority's rationale and to determine if the agency complied with the TCA's requirements. *See Western PCS II Corp. v. Extraterritorial Zoning Auth. of Santa Fe*, 957 F.Supp. 1230, 1236 (D.N.M.1997). The written decision "must contain written findings of fact tied to the evidence of record." *AT & T Wireless Servs. of Florida, Inc. v. Orange County*, 982 F.Supp. 856, 859 (M.D.Fla.1997). The court in *Orange County* explained that local governments may not mask hostility to wireless communications facilities with unreasoned denials that make only vague references to applicable legal standards. *See id.* The procedural requirement of a written decision with articulated reasons based on record evidence forces local governments to rely on supportable neutral principles if they wish to deny a particular wireless installation. *See id.* at 860. If the written decision does not set forth the zoning authority's rationale, this "ground alone is sufficient to quash the [zoning authority's] decision." *Id.* at 859.

■ Here, the Commission informed SBA that its application had been denied in a letter dated April 20, 2000. In pertinent part, the letter provides: "[t]he [Commission] voted on April 11, 2000 to deny [the] application of SBA, Inc., dated January 26, 2000, for locating a telecommunications facility at 36 Ayer Road." The Commission contends that all that is required under the TCA is written notice of the denial from which SBA can file a timely appeal and not the rationale supporting

such a decision. In addition, the Commission asserts that the rationale behind its decision to deny SBA's application is set forth in the hearing transcripts.

Contrary to the Commission's claims, there is extensive authority requiring the Commission's denial to be set forth in a writing that explains the reasons for not allowing the Facility. *See Omnipoint Communications v. Wallingford*, 83 F.Supp.2d 306, 308 (D.Conn.2000); *Cellco Partnership v. Farmington*, 3 F.Supp.2d 178, 181 (D.Conn.1998); *See AT&T Wireless PCS, Inc. v. City Council of Virginia Beach*, 979 F.Supp. 416, 427–28 (E.D.Va. 1997) (explaining that even though the city council provided the court with a transcript of the hearing, the court found that "[t]ranscripts of hearings are properly part of the written record, but as the statute draws a distinction between the written decision and the written record, they can clearly not be the same document.") A written decision would reflect the Commission's collective reasoning, whereas the transcripts of the hearings provide insight only into the individual Commission members' opinions. *See Smart SMR of N.Y. v. Zoning Comm'n of Stratford*, 995 F.Supp. 52, 56–57 (D.Conn.1998) (explaining that "[b]y failing to provide reasons for its decision, the Commission places the burden on this Court to wade through the record below in an attempt to discern the Commission's rationale.")

Here, as in *Smart*, the Commission has improperly placed the burden on the court to determine the reasoning behind the denial of SBA's application. Consequently, because the Commission's April 20 letter did no more than inform SBA that its application had been denied, it violated section 332(c)(7)(B)(iii). *See Orange County*, 982 F.Supp. at 859–60; *Illinois RSA No. 3, Inc. v. County of Peoria*, 963

F.Supp. 732, 743 (C.D.Ill.1997); *Western PCS,* 957 F.Supp. at 1236.

## V. *Substantial Evidence Requirement*

Another limitation on local authorities contained in § 332 is that a denial of a request to construct a personal wireless facility must be "supported by substantial evidence in the record." 47 U.S.C. § 332(c)(7)(B)(iii). Denials under the TCA are reviewed under the traditional standard for judicial review of agency decisions. *See Cellular Tel. Co.,* 166 F.3d at 494. Under this standard, the district court may neither "engage in [its] own fact-finding nor supplant the [local board's] reasonable determinations." *Id.* Substantial evidence means less than a preponderance of evidence, but more than a scintilla of evidence. *See id.* " 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Universal Camera v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). The record "should be reviewed in its entirety, including evidence opposed" to the zoning decision. *See id.* Moreover, "local and state zoning laws govern the weight to be given the evidence," and "the TCA does not 'affect or encroach upon the substantive standards to be applied under established principles of state and local law.' " *Id.* (quoting *Cellular Tel. Co. v. Zoning Bd. of Adjustment,* 24 F.Supp.2d 359, 366 (D.N.J.1998)).[4] In addition, the TCA itself does not provide the legal basis to deny an application to construct a personal wireless facility. That authority must be found in state or local law. *See Cellular,* 166 F.3d at 494.

Here, in denying SBA's application, the Commission relies on: (1) the aesthetic effect of the proposed monopole; (2) the decline in property values due to the construction of the proposed monopole; and (3) SBA's noncompliance with § 9.23.2 of the zoning regulations.

### 1. *Aesthetics*

■ The Commission asserts that the Facility would have an adverse impact on the aesthetic nature of the area. SBA contends that its evidence and expert report demonstrate that there would be no adverse aesthetic impact.

In Connecticut, aesthetics can be a valid ground for local zoning decisions. Normally, a court will not look far beyond the Town's citing of aesthetics to find a valid basis for a local zoning decision. However, under the TCA, aesthetics qualifies as a permissible ground for denial of a permit only if the court concludes that there was "more than a mere scintilla" of evidence before the Commission on the negative visual impact of the cell site. *See Universal Camera,* 340 U.S. at 477, 71 S.Ct. 456.

Although the Commission states there is evidence in the record establishing that its decision was based, in part, on citizen concerns that the proposed monopole would affect the aesthetic nature of the surrounding properties, those citizens who expressed aesthetic concerns at the hearings did not articulate specifically how the pro-

---

4. As the Second Circuit explained in *Cellular,* it is not clear whether the town bears this burden, *see PrimeCo,* 26 F.Supp.2d at 1064 (placing burden on locality to prove denial supported by substantial evidence); *Cellco Partnership v. Town Plan & Zoning Comm'n,* 3 F.Supp.2d 178, 182 (D.Conn.1998) (same); *Smart,* 995 F.Supp. at 56 (same); *Sprint Spectrum L.P. v. Town of Easton,* 982 F.Supp. 47, 49 (D.Mass.1997) (same), or whether the permit applicant has to prove that the locality's decision was not supported by substantial evidence. *See Cellular,* 24 F.Supp.2d at 366 ("[T]he Board's decision is afforded deference with the burden on plaintiffs to overturn that decision ...."); *Century Cellunet v. City of Ferrysburg,* 993 F.Supp. 1072, 1077 (W.D.Mich.1997) (same).

posed monopole would have an adverse aesthetic impact on the community. In fact, it is not clear from the record whether residents will be able to see the monopole, let alone whether it will have a negative visual impact on the community.

In addition, the Commission stated on the record at the hearings that traffic was not an issue; that the visual impact was minimal; and that any noise would be de minimis. *See* T.R. 4/11/00 at 290, R–37. Consequently, when the application was denied it appears that the Commission did not believe that the proposed monopole would have a negative impact on the aesthetic nature of the surrounding community.

Here, the Commission received anecdotal evidence concerning citizens' concerns over the aesthetic impact of the proposed monopole. The evidence in the record was merely a few generalized expressions of concern with the aesthetics of the monopole and speculation as to the visual nature of the proposed monopole of a few residents in the Town of Franklin. Accordingly, the volume and specificity of residents' comments at the hearings, coupled with the Commission's comments that the aesthetics impact would be minimal, are insufficient to support the Commission's denial of SBA's application.[5]

### 2. *Property values*

■ The Commission next argues that citizen concerns regarding the impact on property values were sufficient to satisfy the substantial evidence test. The court disagrees.

Neither the Commission nor the residents offered expert evidence that the proposed monopole would cause a decrease in property values. SBA in return presented an expert report stating that the proposed monopole would have no impact on the property values of nearby homes. (*See* 2/5/00 T.R. at 126–27)

As the Second Circuit has recognized, the evaluation of property value evidence under the TCA raises some difficult questions. In addition to the uncertain weight to be afforded to citizens' views, this argument raises the issue of how to weigh residents' unsupported expressions of concern against a proffer of expert testimony. *See PrimeCo*, 26 F.Supp.2d at 1063 (holding that, in the face of expert testimony evidence, unsupported constituent testimony in opposition to a cellular tower permit will not satisfy the substantial evidence test); *Cellular Telephone Co.*, 24 F.Supp.2d at 372 (holding that "essentially non-expert testimony presented by local residents with possible biases ... is not enough to discredit the testimony of qualified experts"). Further, since property values can be objectively proven, it is not clear if the Commission must receive traditional evidence that would tend to demonstrate that cell sites have a negative impact on property values in order to satisfy the substantial evidence test. *See Sprint Spectrum L.P. v. Town of North Stonington*, 12 F.Supp.2d 247, 254 (D.Conn.1998) (holding that in order for the Town Planning & Zoning Commission to deny a permit application based on property values,

---

**5.** Courts have split as to the weight to be afforded to constituent testimony on aesthetics. *Cf. Omnipoint Corp. v. Zoning Hearing Bd.*, 20 F.Supp.2d 875, 880 (E.D.Pa.1998) (holding that "unsubstantiated personal opinions" expressing "generalized concerns ... about aesthetic and visual impacts on the neighborhood do not amount to substantial evidence") *with AT & T Wireless PCS*, 155

F.3d at 430 (holding that constituent aesthetic concerns could constitute "compelling" evidence for City Council). Nonetheless, because the court has concluded that there were only a few generalized expressions of concern with "aesthetics" the court does not need to address this issue. *See Cellular*, 166 F.3d at 495–96.

the Town bore the burden of putting evidence into the record tending to show such a negative impact).

Nonetheless, the court must determine whether the volume and specificity of the comments were adequate to satisfy the requirement of the substantial evidence standard. *See Cellular,* 166 F.3d at 496; *see also Iowa Wireless,* 29 F.Supp.2d at 922 (finding that "concerns of citizens regarding potential aesthetic and economic effects may amount to substantial evidence in some circumstances" but holding that in that case public concern was too limited to satisfy the substantial evidence standard). irrespective, there must be more than a few generalized concerns about a potential decrease in property values, especially in light of SBA's contradictory expert testimony. *See Cellular,* 166 F.3d at 496.

Once again the Commission does not provide the court with any citations to the record to support its assertion that substantial comments were made regarding concerns about property values. Instead, in summary fashion, the Commission argues that statements made by property owners regarding the decline in property values, without any apparent factual basis, were sufficient to deny SBA's application. This is so despite the fact that Commissioner Fisher stated on the record that the issue regarding property values was unresolved. Consequently, the conclusory assertions of residents do not constitute substantial evidence upon which a denial could be based, particularly in light of the expert report presented by SBA. Moreover, even if the resident comments had a factual basis, the volume and specificity of those comments were not adequate to satisfy the

requirement of the substantial evidence standard. *See Cellular,* 166 F.3d at 496.

### 3. *Section 9.23.2 of the Zoning Regulations*

■ The Commission also argues that SBA's failure to comply with § 9.23.2 of the zoning regulations is a sufficient basis for denying its application to build the monopole. According to the Commission, SBA failed to demonstrate that locations with a higher preference were exhausted before turning to a residential zone. The Commission asserts that, although SBA presented evidence that a 150 foot monopole would not provide coverage if it were placed in a commercial zone, it did not provide any evidence that a monopole of a greater height would not provide adequate coverage if placed in a commercial or industrial zone. This is particularly important because the 150 foot height limitation does not exist in commercial or industrial zones. Consequently, because the Commission was never provided with evidence that a tower of a height greater than 150 feet would not have provided adequate coverage, the Commission maintains that SBA failed to comply with § 9.23.2 of the zoning regulations.[6]

In response, SBA asserts that there is no evidence in the record to support the Commission's position that a tower taller than 150-feet located on a commercial or industrial property will enable carriers to eliminate coverage gaps. Moreover, SBA maintains that the commercial or industrial sites in Franklin are not in the search ring, have an elevation 200 to 300 feet lower than the proposed Property and will

6. That regulation provides that wireless telecommunications facilities may be located in certain areas in the following order of preference: a. On an existing structure, b. On an existing approved tower, c. On a new tower to be erected on or near the site of an existing tower which is to be removed, d. On a new tower located on property occupied by one or more existing tower, e. On a new tower located in a commercial or industrial zone, f. On a new tower located in a residential or planned recreation zone.

not fill coverage gaps. (*See* 4/11/00 TR at 230–31.) Consequently, SBA argues that it presented ample evidence to satisfy its burden of demonstrating full compliance with § 9.23.2 of the zoning regulations.

Although the Commission states that SBA did not present evidence about the feasibility of using tower heights in excess of 200 feet on commercial properties, nothing in the record indicates that the Commission considered this fact or that this was a basis for its decision to deny SBA's application. In fact, the record contains evidence that SBA fully complied with all the applicable zoning regulations including § 9.23.2. Accordingly, noncompliance with § 9.23.2 was not a sufficient basis to deny SBA's application. Accordingly, the Commission's decision to deny SBA's application was not supported by substantial evidence and thus violates the TCA.

### 4. *Remedy For TCA Violations*

■ SBA asserts that, because the Commission failed to base its decision on substantial evidence in the written record, the court should order the Commission to issue SBA a special exception to erect the Facility at 36 Ayer Road. The court agrees.

The TCA does not specify a remedy for violations of the cellular siting subsection. *See* 47 U.S.C. § 332(c)(7)(B)(v) (granting jurisdiction for review of any final action that is inconsistent with the TCA and simply directing the court to "bear and decide such action[s] on an expedited basis"). However, the majority of district courts that have heard these cases have held that the appropriate remedy is injunctive relief in the form of an order to issue the relevant permits. *See, e.g., Iowa Wireless Servs. v. City of Moline*, 29 F.Supp.2d 915, 924 (C.D.Ill.1998) (ordering defendant to grant plaintiff a special use permit "with all deliberate speed"); *Omnipoint Corp.,*

20 F.Supp.2d at 881–82 (ordering zoning board to issue requested special exception permit and declining to remand because to do so would "frustrate the TCA's intent to provide aggrieved parties full relief on an expedited basis"); *Illinois RSA No. 3*, 963 F.Supp. at 747 (concluding that injunction directing defendant to issue permit is appropriate relief under TCA); *BellSouth Mobility Inc. v. Gwinnett County, Georgia*, 944 F.Supp. 923, 929 (N.D.Ga.1996) (granting plaintiffs' request for writ of mandamus and ordering defendant to grant plaintiffs' requested permit); *but see PrimeCo*, 26 F.Supp.2d at 1066–67 (declining plaintiff's request for a writ of mandamus and remanding case to Village Board of Trustees for additional proceedings in accordance with the opinion); *AT & T v. Orange County*, 982 F.Supp. 856, 860–62 (M.D.Fla.1997) (declining AT & T's request for injunctive relief in deference to local authority and remanding to Board for further proceedings). Consequently, this action will not be remanded back to the Commission because it would frustrate the TCA's intent to provide aggrieved parties full relief on an expedited basis.

Accordingly, the Commission's denial of SBA's application is null and void. Furthermore, the court orders the Commission to issue SBA a special exception in accordance with its application for the construction of a wireless facility at 36 Ayers Road in Franklin, Connecticut.

### VI. *Section 1983 Claim*

■ In addition to the requested injunctive relief, SBA asserts that the Commission violated § 1983 by violating its federal rights under the TCA. In response, the Commission contends that a violation of the TCA cannot support a § 1983 claim.

To state a claim under § 1983, a plaintiff must prove that the defendant, acting under the color of state law, deprived the

plaintiff of a right secured by the Constitution and laws of the United States. *See West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40, (1988). If a plaintiff's cause of action is not based on a Constitutional violation, the plaintiff must assert the violation of a federal right, and not merely a federal statutory violation. *See Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). Thus the court must determine if the Commission's violation of § 332(c)(7) of the TCA is enforceable under § 1983.

A cause of action under section 1983 is not available to aggrieved plaintiffs if "the federal statute at issue implicitly or explicitly precludes a § 1983 action." *Sprint Spectrum L.P. v. Town of Easton*, 982 F.Supp. 47, 53 (D.Mass.1997) (citing *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). Congress may implicitly foreclose a § 1983 action by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983. *See Blessing*, 520 U.S. at 329, 117 S.Ct. 1353. Additionally, a plaintiff cannot maintain a § 1983 action if the federal statute, here the TCA, does not create a substantive right. *See id.* To determine if section 332(c)(7) of the TCA creates a substantive right, courts consider whether (1) Congress intended the statutory provision to benefit the plaintiff; (2) the right allegedly protected by the TCA is not so " 'vague and amorphous' that its enforcement would strain judicial competence;" and (3) the TCA clearly imposes a binding obligation on states. *See id.* (citation omitted).

The court concludes that a violation of the TCA can support a § 1983 claim. *See Town of Easton*, 982 F.Supp. at 53. The TCA does not implicitly or explicitly foreclose § 1983 actions, nor does it provide a comprehensive enforcement scheme which would preclude a § 1983 action. *See id.* Additionally, the TCA creates substantive rights because it allows an individual to sue in state or federal court if he or she was adversely affected by a zoning authority's decision. Enforcing SBA's rights under the TCA through § 1983 would not strain judicial competence. *See Town of Easton*, 982 F.Supp. at 53 (applying the Supreme Court's three-prong test from *Blessing*). Moreover, other courts in the Second Circuit have held that § 1983 relief is available for violations of the TCA. *See Smart*, 995 F.Supp. at 60–61; *SBA Comm., Inc. v. Brookfield*, 96 F.Supp.2d 139, 142 (D.Conn.2000); *Omnipoint Comm. v. Wallingford*, 91 F.Supp.2d 497 (D.Conn.2000); *Cellco Partnership v. Farmington*, 3 F.Supp.2d 178 (D.Conn. 1998).

Consequently, although the Second Circuit has not decided the issue, the court concludes that the TCA does not preclude SBA from bringing its § 1983 claim. Accordingly, because the court has already determined that the Commission violated the TCA, SBA is entitled to summary judgment on its § 1983 claim.

## CONCLUSION

For the reasons stated above, SBA's Motion for Summary Judgment [doc. # 27] is GRANTED and the Commission's Motion for Summary Judgment [doc. # 33] is DENIED.